## PARIS RUPERT v. STATE.

Nos. A-1319, A-1320.   Opinion Filed April 19, 1913.

(131 Pac. 713.)

1. **FORMER JEOPARDY—Execution of Judgment.** The constitutional provision (section 21, Bill of Rights), "nor shall any person be twice put in jeopardy of life or liberty for the same offense," and the common-law principals therein declared are broad enough to mean that no one can be twice lawfully punished for the same offense. Hence, when a court has rendered judgment and imposed sentence upon a plea of guilty for the offense charged, and such judgment and sentence has been executed and satisfied, that ends the protection, and the power of the court as to that offense is at an end; and the court is without jurisdiction to render a second judgment and sentence upon the same charge.

2. **SAME—"Jeopardy" Defined.** Jeopardy, in its constitutional and common-law sense, has a strict application to criminal prosecutions only; and the word "jeopardy," as used in the Constitution, signifies the danger of conviction and punishment which the defendant in a criminal prosecution incurs when put upon trial before a court of competent jurisdiction under an indictment or information sufficient in form and substance to sustain a conviction.

3. **SAME—Validity of Judgment.** The defendant, upon his plea of guilty, was sentenced to pay a fine of $100—a punishment that is authorized by the statute for the offense charged. On the same day he paid the fine and satisfied the judgment. A month later he was brought into court, the original sentence was set aside, and he was sentenced to pay a fine of $100 and to be confined in the county jail for 15 days. **Held,** that the second judgment and sentence is, under such circumstances, null and void.

(Syllabus by the Court.)

*Appeal from Blaine County Court;*
*George W. Ferguson, Judge.*

Paris Rupert was convicted in two cases of the violation of the game laws, and he appeals. Reversed.

These cases arising upon like facts and involving the same principles of law will be considered together.

From the records in the respective cases, the following facts appear:

February 23, 1911, there were filed two informations in the county court of Blaine county; each charging plaintiff in error, Paris Rupert, with a violation of the game laws. On these informations the said Paris Rupert was arraigned on February 24, 1911, and entered pleas of not guilty thereto. On April 3, 1911, both cases were assigned for trial April 19th. On April 13th it appears that he withdrew his plea of not guilty and entered his plea of guilty in each case, and on the same day he was sentenced to pay a fine of $100 and costs in each case. On the same day he paid the fine in each case and received a receipt therefor, as follows:

"In case 1758 and 1759, April 13, 1911, received from Paris Rupert two hundred dollars in payment of fines, State v. Rupert, $200.00.

[Signed] "GEORGE W. FERGUSON,
"County Judge."

And thereupon he was released. Thereafter, on April 18, 1911, he paid the costs in each and received a receipt therefor, as follows:

"April 18, 1911.
Received of Paris Rupert as costs in case No. 1758............$17.80
Received of Paris Rupert as costs in case No. 1759............ 12.15

$29.95

[Signed] "W. C. BURT,
"Clerk of the Court."

The record shows that as a part of the costs so paid items were charged for journal entries and recording judgments. The record further shows that on April 14th the court turned over to the deputy game warden the sum of $100; the same being one-half of the fine in each case. On May 9th the plaintiff in error was rearrested on what is termed an alias warrant, and on the same day he was brought before the court and again sentenced. The judgment of the court in each case is as follows:

"It is therefore ordered and adjudged that the judgment and sentence of this court shall be that the defendant pay a fine of $100.00 and serve in the county jail at hard labor for a period of fifteen days, and that the defendant pay the costs of this action, including the county attorney's fee. It is further ordered that in case of default of the payment of the said fine that the said defendant be confined in the county jail at the rate of $2.00 for each day of the said fine costs and fees."

The plaintiff in error was on said day ordered committed to jail in execution of the first sentence. Thereupon he applied to this court for a writ of *habeas corpus,* which was denied. See *Ex parte Rupert,* 6 Okla. Cr. 90, 116 Pac. 350. He then filed motions for new trials in the lower court, which were overruled. He gave notice of appeal, and the court fixed bail in the sum of $500 in each case. From the judgments, appeals were perfected. The question presented in each case is the same.

*Wm. O. Woolman,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, J. The single question presented for our decision is: Could the county court legally impose the judgments and sentences appealed from? Otherwise stated, has a court the power to revise and increase a judgment and sentence at the same term after it has been executed and satisfied?

The general power of a court to reconsider its judgment and sentence and reverse, vacate, or modify it at any time during the term in which it was rendered, or to increase or diminish the sentence which it has imposed, where the original sentence has not been executed or put into operation, is undeniable. Bish. New Crim, Proc. sec. 1288, and cases cited. This power is inherent in all courts of record. However, it would seem there must, in the nature of the power thus exercised by the court, be in criminal cases some limit to it. It is clear that a court cannot pass two sentences for the same offense, to be enforced at the same time. And the validity of a

second judgment and sentence must be because the first judgment and sentence is legally annulled or revoked and made void.

That no person shall be twice put in jeopardy for the same offense is a universally accepted principle of the common law, and this principle has been embodied in the federal Constitution and in all state Constitutions, and it is incorporated in the Constitution of the state of Oklahoma by express provisions, as follows:

"Nor shall any person be twice put in jeopardy of life or liberty for the same offense." (Sec. 21, Bill of Rights.)

Jeopardy, in its constitutional or common-law sense, has a strict application to criminal prosecutions only. The word "jeopardy," as used in the Constitution, signifies the danger of conviction and punishment which the defendant in a criminal prosecution incurs when put upon trial before a court of competent jurisdiction under a valid indictment, information, or complaint, and in this use it is applied only to strictly criminal prosecutions. *Stout v. State,* 36 Okla. 744, 130 Pac. 553.

"A person is not in legal jeopardy until put upon trial before a court of competent jurisdiction under an information or indictment sufficient in form and substance to sustain a conviction." (Cooley, Const. Lim. [7th Ed.] 467, and cases cited.)

We think this provision of the Bill of Rights, and the principle therein declared, is broad enough to mean that no person can be twice lawfully punished for the same offense. The one follows from the other, and this constitutional provision is designed and intended to protect the accused from a double punishment as much as to protect him from two trials. For this reason we think that where a judgment and sentence has been executed and satisfied that ends the prosecution, exhausts the power of the court, and terminates its jurisdiction, and the court is without power or jurisdiction to render another judgment and sentence in the case.

The leading case upon this question is *Ex parte Lange,* 18 Wall. 163, 21 L. Ed. 872. In that case the defendant was

convicted of appropriating mail bags, of the value of less than $25, the punishment for which offense, as provided by statute, was imprisonment for not more than one year or a fine of not less than $10 or more than $200. The sentence was one year's imprisonment and $200 fine. The defendant was committed in pursuance of the sentence and paid the fine the day after his commitment. On the second day after his commitment he was brought by *habeas corpus* before the same judge who sentenced him, who vacated the former judgment and sentenced the defendant anew to one year's imprisonment. The case came before the Supreme Court of the United States on *habeas corpus,* and the defendant was discharged, on the ground that, where a statute imposes as a punishment a fine or imprisonment, and the court has both fined and imprisoned the defendant, who thereupon pays the fine, the court has no power, even during the same term, to modify the judgment by imposing imprisonment instead of the former sentence. One of the alternative requirements of the statute having been satisfied, the power of the court as to the offense was at an end. Mr. Justice Miller, delivering the opinion of the court, said:

"The judgment of the court to this effect being rendered and carried into execution before the expiration of the term, can the judge vacate that sentence and substitute fine or imprisonment and cause the latter sentence also to be executed? Or, if the judgment of the court is that the convict be imprisoned for four months, and he enters immediately upon the period of punishment, can the court, after it has been fully completed, because it is still in session of the same term, vacate that judgment and render another, for three or six months' imprisonment, or for a fine? Not only the gross injustice of such a proceeding, but the inexpediency of placing such a power in the hands of any tribunal, is manifest.

"If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offense. And though there have been nice questions in the application of this rule to cases in which the act charged was such as to come within the definition of more than one statutory offense, or to bring the party within

the jurisdiction of more than one court, there has never been any doubt of its entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offense.

"The principle finds expression in more than one form in the maxims of the common law. In civil cases the doctrine is expressed by the maxim that no man shall be twice vexed for one and the same cause. *'Nemo debet bis vexari pro una et eadem causa.'* It is upon the foundation of this maxim that the plea of a former judgment for the same matter, whether it be in favor of the defendant or against him, is a good bar to an action. In the criminal law the same principle, more directly applicable to the case before us, is expressed in the Latin, *'Nemo bis punitur pro eodem delicto,'* or, as Coke has it, *'Nemo debet bis puniri pro uno delicto.'* 'No one can be twice punished for the same crime or misdemeanor,' is the translation of the maxim by Sergeant Hawkins. Blackstone, in his Commentaries, cites the same maxim as the reason why, if a person has been found guilty of manslaughter on an indictment, and has had benefit of clergy, and suffered the judgment of the law, he cannot afterwards be appealed. Of course, if there had been no punishment, the appeal would lie, and the party would be subject to the danger of another form of trial. But by reason of this universal principle that no person shall be twice punished for the same offense that ancient right of appeal was gone when the punishment had once been suffered. The protection against the action of the same court in inflicting punishment twice must surely be as necessary, and as clearly within the maxim, as protection from chances or danger of a second punishment on a second trial.

"The common law not only prohibited a second punishment for the same offense, but it went further and forbade a second trial for the same offense, whether the accused had suffered punishment or not, and whether in the former trial he had been acquitted or convicted. Hence to every indictment or information charging a party with a known and defined crime or misdemeanor, whether at the common law or by statute, a plea of *auterfois acquit* or *autrefois convict* is a good defense. * * * If we reflect that at the time this maxim came into existence almost every offense was punished with death or other punishment touching the person, and that these pleas are now held valid in felonies, minor crimes, and misdemeanors alike, and

on the difficulty of deciding when a statute under modern systems does or does not describe a felony when it defines and punishes an offense, we shall see ample reason for holding that the principle intended to be asserted by the constitutional provision must be applied to all cases where a second punishment is attempted to be inflicted for the same offense by a judicial sentence.

"For of what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced on the same verdict? Why is it that, having once been tried and found guilty, he can never be tried again for that offense? Manifestly it is not the danger or jeopardy of being a second time found guilty. It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution. But if, after judgment has been rendered on the conviction, and the sentence of that judgment executed on the criminal, he can be again sentenced on that conviction to another and different punishment, or to endure the same punishment a second time, is the constitutional restriction of any value? Is not its intent and its spirit in such a case as much violated as if a new trial had been had, and on a second conviction a second punishment inflicted? The argument seems to us irresistible, and we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it.

"But there is a class of cases in which a second trial is had without violating this principle, as when the jury fail to agree, and no verdict has been rendered, or the verdict set aside on motion of the accused, or on writ of error prosecuted by him, or the indictment was found to describe no offense known to the law. *    *    *

"We are of opinion that when the prisoner, as in this case, by reason of a valid judgment, had fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone; that the principle we have discussed then interposed its shield and forbade that he should be punished again for that offense. The record of the court's proceedings at the moment the second sentence was rendered, showed that in that very case, and for that very offense, the prisoner had fully performed, completed, and endured one of the alternative punishments which the law pre-

scribed for that offense, and had suffered five days' imprisonment on account of the other. It thus showed the court that its power to punish for that offense was at an end. Unless the whole doctrine of our system of jurisprudence, both of the Constitution and the common law, for the protection of personal rights in that regard are a nullity, the authority of the court to punish the prisoner was gone. The power was exhausted; its further exercise was prohibited. It was error, but it was error because the power to render any further judgment did not exist. * * *

"There is no more sacred duty of a court than, in a case properly before it, to maintain unimpaired those securities for the personal rights of the individual which have received for ages the sanction of the jurist and the statesman; and in such cases no narrow or illiteral construction should be given to the words of the fundamental law in which they are embodied. Without straining either the Constitution of the United States or the well-settled principles of the common law, we have come to the conclusion that the sentence of the circuit court, under which the petitioner is held a prisoner, was pronounced without authority, and he should therefore be discharged."

In these cases the informations were verified by a deputy state game and fish warden.

The statute prescribes the punishment for violation of the game law, as follows (section 3563, Comp. Laws 1909, Rev. Laws, 6885):

"It shall be a misdemeanor to violate any section of this act, if not otherwise provided in this act, and upon conviction shall be punished by a fine of not less than ten dollars ($10) or more than one hundred dollars ($100), or by imprisonment in the county jail not less than ten days or more than thirty days, or both such fine and imprisonment."

Thus it will be seen that the court pronounced judgment and sentence in both cases, as authorized by statute, for the offense of which the defendant pleaded guilty, and that in accordance with section 3557, which provides that when a deputy game and fish warden makes the complaint he shall receive one-half of all fines collected upon his complaint, the

court, when said fines were paid, paid the complaining witness his proportionate share of the fines paid by the defendant.

The object and purpose of rendering the second judgments is not apparent. However, it is immaterial, as the county court had no jurisdiction to render the judgments and sentences appealed from.

Said judgments are therefore reversed.

ARMSTRONG, P. J., and FURMAN, J., concur.