## QUILLIE McCONNELL v. STATE.

No. A-3274—Opinion Filed Jan. 27, 1919.

Rehearing Denied May 10, 1921.

(197 Pac. 521.)

(Syllabus.)

1.  **WITNESSES—Incriminating Evidence—Right to Silence—Waiver.** Bill of Rights, § 21, of the Constitution providing, "No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided," simply protects each person in the right of silence. It does not mean that he shall not be allowed or permitted to give testimony which may tend to incriminate him. The right of silence is one which may be waived, either by agreement or by the voluntary act of the witness, and is waived if the right is not asserted in apt time.

2. **CRIMINAL LAW—Incriminating Evidence—Right to Silence.**
Before any person can secure immunity under section 27 of the Bill of Rights of our Constitution on account of incriminatory evidence, given by him, as a witness, for the state, such witness must have testified under an agreement made with the prosecuting attorney, approved by the court, or such witness must have claimed the privilege of silence, which was by the court denied and such witness must have been compelled by the court to so testify.

3. **JUDGMENT AND SENTENCE—Stay of Execution—Validity**
Under Procedure Criminal (section 5970, Rev. Laws 1910) providing, "No judge, court or officer other than the Governor can reprieve or suspend the execution of a judgment of death * * * unless a writ of error is allowed and taken," a reprieve can only be granted by the Governor pending the perfecting of an appeal in the case, and an order of the court staying the execution of the judgment of death indefinitely, entered after the term in which the judgment was rendered, is without authority of law, and is therefore a nullity.

4. **APPEAL AND ERROR—Reduction of Sentence—Power of Court.**
Under Procedure Criminal (section 6003, Rev. Laws 1910), this court in the furtherance of justice has the power to modify any judgment appealed from by reducing the sentence.

5. **SAME—Modification of Death Sentence.** The power of this court to modify a judgment inflicting the death penalty for murder to imprisonment for life at hard labor, when deemed proper in the furtherance of justice, is not the power to commute by the chief executive of the state. The judicial power to modify a judgment and the executive power to pardon or commute are wholly distinct in their nature. The one is an award of justice. The other is an act of grace.

6. **SAME.** Plaintiff in error upon a plea of guilty was sentenced to suffer death. The record shows that on September 3, 1917, he was arraigned on an information filed August 25th, charging murder, alleged to have been committed on August 22, 1917, and pleaded not guilty. Upon proper showing that he was a poor person, the court appointed counsel to defend him. September 22d, he filed petition for a change of venue. October 1st, the court denied the change of venue, also his motion for a continuance, and called the case for trial, whereupon plaintiff in error withdrew his plea of not guilty and entered a plea of guilty. The court on October 18, 1917, rendered judgment and sentence of death. During the interim plaintiff in error, without notice to his counsel, was used as a witness for the state on the trial of his codefendant. After judgment, plaintiff in

error filed motion for a new trial and for leave to withdraw his plea of guilty. The following term the court made an order suspending indefinitely the execution of the death warrant. Plaintiff in error prays that on the alleged errors and in furtherance of justice the sentence be modified to imprisonment for life; the Attorney General agrees that such modification should be made. Held that, upon a full consideration of the record and the irregularities complained of, the court is of opinion that in furtheranc of justice the judgment and sentence of death by electrocution should be modified to imprisonment for life at hard labor, and, as so modified, affirmed.

*Appeal from District Court, Lincoln County;
Chas. B. Wilson, Judge.*

Quillie McConnell was convicted of murder, and appeals. Modified and affirmed.

*Roscoe Cox,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. This appeal is from a judgment rendered on a plea of guilty to a charge of murder under which plaintiff in error, Quillie McConnell, was sentenced to suffer the punishment of death by electrocution.

Errors are assigned upon orders overruling motions for continuance, for change of venue, and for a new trial; also, upon various orders of the court setting and resetting the date of execution.

It appears from the record that plaintiff in error, Quillie McConnell, and Noah Barnard, were by information filed in the district court of Lincoln county on the 25th day of August, 1917, charged with the crime of murder alleged to have been committed in said county on the 22d day of August, 1917, by shooting one George E. Arnold with a pistol.

On September 3, 1917, plaintiff in error was arraigned and pleaded not guilty. September 22d, plaintiff in error filed his verified application for a change of venue on the ground that the prejudice existing in this county against affiant is such that he has at various times been in danger of losing his life at the hands of the citizens of said county; that, because of said prejudice against affiant, he believes and alleges that a fair and impartial trial cannot be had by affiant in said county, which application was supported by six corroborating affiants.

October 1, 1917, the county attorney filed about 75 controverting affidavits to the effect that there does not exist any well-defined or expressed prejudice generally throughout the county against the defendant, Quillie McConnell, that would prevent him from securing a fair and impartial trial in said county, and that at no time during the pendency of this prosecution has the defendant been in danger of losing his life at the hands of the citizens of said county.

On the issue thus joined, the state called as witnesses each of plaintiff in error's supporting affiants. Thereupon counsel for plaintiff in error stated that the defendant demanded an opportunity to examine the affiants who made counter affidavits for the state for the purposes of showing that these affiants believe the defendant is guilty, which request was refused, and the court denied the petition for a change of venue and allowed an exception.

Whereupon plaintiff in error filed a motion for continuance on the ground:

"That said defendant was at the time of his arrest unable and has at all times since been unable of his own means to employ an attorney, and that an attorney was appointed by the court to defend him; that since said de-

fendant has had the benefit of counsel, said counsel has been engaged in procuring a change of venue for the trial of said cause, and for this reason, and for the reason that such a short time has elapsed said defendant's counsel has been unable to properly prepare for the defense of this defendant."

In support of the motion, Roscoe Cox was sworn and stated:

"That it has been less than a month since I was appointed to defend this affiant; that I am young in the practice of law; that I have never engaged in the criminal practice, and have never had a capital case; that I have by the force of circumstances been compelled to look after the practice of a partner who has gone to war and also the practice of another attorney who is going to war; that it would require all my time and perhaps more from the time I was appointed to properly prepare the defense in this case; that I don't think at this time that I am prepared to make a proper defense for the defendant; that I could prepare a proper defense if given additional time.

"The Court:    Motion for continuance overruled.    Exception allowed."

Thereupon the case was called for trial.

"Mr. Cox:    The defendant wishes at this time to withdraw his plea of not guilty and enter a plea of guilty, and I will say that in this connection that the only way that the defendant could protect his rights and make a consistent fight, in the first instance was to appeal to the court for a change of venue, and a continuance of his cause, and that matter should not be considered against him but should rather be considered in his favor.

"The Court:    You have heard, Mr. McConnell, what your attorney has said in reference to your plea.    Is it

your wish at this time to withdraw your plea of not guilty and enter a plea of guilty?

"McConnell: Yes, sir.

"The Court: You do this after a full consideration of your case and after consultation with Mr. Cox, do you?

"McConnell: Yes, sir.

"The Court: And fully understand the nature of your plea?

"McConnell: Yes, sir.

"The Court: Let the plea of not guilty be withdrawn and the plea of guilty be entered, and let defendant be taken back. A later day will be fixed for the judgment and sentence of the court."

October 18, 1917, the court rendered judgment and sentenced plaintiff in error "to suffer death by electrocution at the state penitentiary at McAlester, on the 14th day of December, 1917," and remanded plaintiff in error to the custody of the sheriff. And on the same day, defendant being present in person and by his attorney, the following proceedings were had:

"The Court: Mr. McConnell, stand up. I have sentenced you for the crime for which you have been convicted to death, the sentence to be executed on the 14th day of December, 1917. I see fit to change that date from December 14 to December 28, 1917, and you will be sentenced to be executed by the warden of the penitentiary at McAlester on the 28th day of December, 1917.

"McConnell: What difference does it make?"

November 19, 1917, a motion for new trial, including application for leave to withdraw plea of guilty, was filed in part as follows:

"That said defendant was surprised at the sentence of the court.    That, relying upon an almost unbroken line of precedent, defendant expected a life sentence upon his plea of guilty.

"That after defendant's plea of guilty was received and before sentence and while in custody of the law, he was taken into court and required to give testimony in the trial of the man who was charged jointly with this defendant in the commission of the crime with which he was charged and for which he was sentenced.    That defendant was brought into court and required to testify in said cause, without notice to his counsel; that defendant's counsel was not informed and did not know that defendant was going to be required to give testimony in said cause, and said counsel was not present in court when defendant was required to so testify.    That defendant was required and did so testify without being informed of his constitutional rights.    That defendant was examined and cross-examined by the state and by the attorneys for defendant's alleged accomplice, and the testimony thus elicited was unfair and prejudicial to defendant, in that it was heard and received by the court that later sentenced said defendant.    That defendant was ignorant of his rights and had no opportunity to be informed thereof and did not know that defendant had so testified until more than three days after the sentence of said defendant.

"That the action of the trial court, in refusing a change of venue for the trial of defendant's cause, placed defendant in the position where he had to plead guilty or proceed to trial in a county hostile to him and before a prejudiced jury."

It further appears from the record that the court made the following order:

"Stay of Execution.

"Now on this 14th day of January, 1918, comes on the

hearing of defendant above for a stay of the execution of the sentence pronounced upon the above defendant, Quillie McConnell, in the above-entitled case, and the court having heard the evidence produced and being fully advised in the premises, finds notice of appeal has been given to the county attorney and filed with the clerk, and that said execution should be stayed pending the appeal of said defendant.

"It is therefore ordered, adjudged, and decreed that the execution of the sentence of death pronounced against the defendant above in the above-entitled case be stayed pending the appeal of said defendant, and that the clerk of said court notify the warden of the state penitentiary at McAlester, Okla., that said execution has been stayed.

"Chas. B. Wilson, Jr., District Judge."

From the records in the office of the Governor, it appears that on December 19, 1917, the Governor issued an order staying the execution of the plaintiff in error until January 25, 1918. On January 19, 1918, the Governor made another order staying the execution until March 1, 1918, and on February 23, 1918, the Governor issued another order staying the execution until April 26, 1918. On March 1, 1918, an appeal was perfected by filing in this court a petition in error with case-made, and an order was entered by this court suspending and staying the execution of the death warrant until the appeal would be determined, and until further order of this court.

It is urged on behalf of the plaintiff in error that the state in calling him as a witness before the court pronounced judgment and sentence on his plea of guilty, thereby granted him immunity from further prosecution and punishment for the crime charged in the information.

Bill of Rights, § 21, provides:

"No person shall be compelled to give evidence which

will tend to incriminate him, except as in this Constitution specifically provided."

And Bill of Rights, § 27, provides:

"Any person having knowledge or possession of facts that tend to establish the guilt of any other person or corporation charged with an offense against the laws of the state, shall not be excused from giving testimony or producing evidence, when legally called upon so to do, on the ground that it may tend to incriminate him under the laws of the state; but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify or produce evidence."

Our Procedure Criminal (section 5879) provides:

"When two or more persons are included in the same indictment or information, the court may, at any time before the defendants have gone into their defense, on the application of the county attorney, direct any defendant to be discharged from the indictment or information, that he may be compelled to be a witness for the state."

There is nothing in the record before us tending to show that plaintiff in error was not a voluntary witness for the state on the trial of his codefendant.

In the case of *Scribner v. State,* 9 Okla. Cr. 465, 132 Pac. 933, Ann. Cas. 1915B, 381, the foregoing constitutional provisions were construed by this court, and it was held that section 21 of the Bill of Rights "simply protects each person in the right of silence. It does not mean that he shall not be allowed or permitted to give testimony which may tend to incriminate him. The right of silence is one which may be waived, either by contract or by the voluntary act of the witness, and is waived if the right is not asserted in apt time." And that—

"Before any person can secure immunity under section 27 of the Bill of Rights, on account of incriminatory evidence, given by him as a witness before a grand jury or in any court, such witness must have testified under an agreement made with the prosecuting attorney, approved by the court, or such witness must have claimed the privilege of silence, which was by the court denied, and such witness must have been compelled by the court to so testify."

If it were shown by the record that plaintiff in error was not a voluntary witness for the state, the point raised would be properly presented. The record does not disclose any of the facts connected with the homicide, and no appeal was taken by the codefendant from the judgment of conviction against him; therefore there is nothing before this court showing the circumstances under which plaintiff in error testified as a witness for the state. However, it is manifestly apparent that in common fairness to plaintiff in error, who it appears is a boy about eighteen years of age, his counsel should have been notified that the state intended to use him as a witness on the trial of his codefendant, and he should have had the benefit of consulting his counsel before being called as such witness. In this connection, we must confess that we know of no precedent in American criminal jurisprudence, where a defendant in a murder case voluntarily testified as a witness for the state against a codefendant, that he was afterwards sentenced to suffer the extreme penalty of the law.

It is also urged that the order of the trial court entered January 14, 1918, suspending indefinitely the execution of the judgment and sentence, was in effect a setting aside of the judgment and sentence.

The general power of a court to reconsider its judgment and sentence and reverse, vacate, or modify it at

any time during the term in which it was rendered, or to increase or diminish the sentence which it has imposed, where the original sentence has not been executed, or put into operation, is undeniable.   This power is inherent in all courts of record.   *Rupert v. State,* 9 Okla. Cr. 226, 131 Pac. 713, 45 L. R. A. (N. S.) 60.

It appears from the record that the order was not made during the term in which the judgment was rendered. Our Procedure Criminal (section 5970, Rev. Laws) provides that—

"No judge, court or officer other than the Governor can reprieve or suspend the execution of a judgment of death, except the sheriff, * * * unless a writ of error is allowed and taken."

Under this provision an order of the court or trial judge staying the execution of a judgment of death, entered after the term in which the judgment was rendered, is without authority of law and is therefore a nullity.

See *Opinion of the Judges,* 3 Okla. Cr. 315, 105 Pac. 684.

It is also urged that the trial court abused its discretion in refusing to permit the plaintiff in error to withdraw his plea of guilty.

Our Procedure Criminal (section 5804, Rev. Laws) provides that—

"The court may, at any time before judgment, upon a plea of guilty, permit it to be withdrawn, and a plea of not guilty substituted."

In *Jenkins v. State,* 6 Okla. Cr. 516, 120 Pac. 298, it is said:

"In respect to the question of discretion, courts have distinguished between the higher and lower grades of crime,

and construing this section of the statute in a felony case, and especially in a capital case, if the defendant has entered a plea of guilty without the benefit of counsel or was influenced to enter such plea, either by his counsel, or by the prosecution, or by act of the court, he should be accorded the right of trial by jury, by permitting him at any time before judgment to withdraw his plea of guilty and substitute therefor a plea of not guilty. In such cases the refusal of a trial court to permit this to be done would be considered an abuse of judicial discretion."

It is also urged that it was an abuse of discretion for the court to neglect, before pronouncing judgment and sentence, to take the testimony as provided by section 5954, Procedure Criminal, which provides that—

"After a plea or verdict of guilty in a case where the extent of the punishment is left to the court, the court, upon the suggestion of either party that there are circumstances which may be properly taken into view, either in aggravation or mitigation of the punishment, may in its discretion hear the same summarily at a specified time and upon such notice to the adverse party as it may direct."

It does not appear from the record that any suggestion or request was made under the statute.

Finally, counsel for the defendant contends that if this court finds that immunity was not granted, or the judgment and sentence vacated, that at least the judgment and sentence should in furtherance of justice be modified to imprisonment for life under the power granted by Procedure Criminal (section 6003, Rev. Laws) providing: '

"The appellate court may reverse, affirm or modify the judgment appealed from, and may, if necessary or proper, order a new trial."

And the Attorney General consents to such modification.

Upon a painstaking examination of the record, we are inclined to think that, without the power given under the statute to modify the judgment and sentence, we would be constrained to reverse the judgment and remand it for a new trial.

In the case of *Fritz v. State,* 8 Okla. Cr. 342, 128 Pac. 170, it is said:

"The power of this court to modify a judgment inflicting the death penalty for murder to imprisonment for life at hard labor, when deemed proper in the furtherance of justice is in no sense the power of commutation of the sentence of the lower court. Commutation can be granted only by the chief executive of the state, and is granted as a matter of clemency. The judicial power to modify a judgment and sentence and the executive power to pardon, parole, or commute are wholly distinct in their nature. The one is an award of justice, and the other is an act of grace. Commutation is a matter of discretion, and may be refused. Justice is imperative, and must not be denied. The fact that the Governor has the power to commute does not abridge the defendant's right to appeal to this court for relief."

Under the provisions of our Procedure Criminal, it is the duty of this court to review the record, and in a proper case, if necessary, in the furtherance of justice, modify the judgment.

For the reasons stated, we think that this is a proper case to exercise the power of the court, and that the judgment and sentence of death by electrocution should be modified to imprisonment for life at hard labor.

The judgment of the district court of Lincoln county

is therefore modified to the extent that the sentence will be changed from the infliction of the death penalty to that of imprisonment in the state penitentiary at hard labor for life, and as thus modified the judgment is affirmed.

DOYLE, P. J., and MATSON, J., concur.