## LEE DAVIS v. STATE.

No. A-8978. Dec. 3, 1935.
Rehearing Denied March 13, 1936.
(57 Pac. [2d] 634.)

30

32

Mrs. Maud L. Davis, wife of defendant,

34

Finis M. Walker and Fred L. Patrick, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen. (Don Lewis and S. M. Cunningham, of counsel), for the State.

DOYLE, J. (after stating the facts). This appeal is from a conviction of murder and sentence in pursuance of the verdict of imprisonment for life. Taking up the errors assigned in the order presented in appellant's brief:

First. It is contended that the evidence is insufficient to justify or support the verdict, in that it fails to establish anything more than a mere suspicion of guilt. Citing Moore v. State, 4 Okla. Cr. 212, 111 Pac. 822.

The state's contention is that the defendant, Davis, knowing the character and criminal records of Eldon Wilson, Aussie Elliott, and Raymond Moore, alias Dupert Carolan, took them into his house and furnished them lodging, food, and shelter, and thereby harbored them, knowing they were outlaws and fugitives from justice. That he knew they were armed with the most deadly weapons and would shoot, and if necessary kill, in order to avoid arrest. That said defendant and the other three men whom he was harboring saw the car approaching and had some kind of agreement or understanding as to what part each would play upon its arrival if the persons in the car proved to be officers. That the defendant, Davis, when he came out into the yard and told the officers there was only one country boy in the house, was carrying out his part of an understanding or agreement that would enable the three desperadoes in the house to avoid arrest, or to take advantage of the officers, and if necessary slay them. That said defendant was the pivot around which these other three men were revolving, and that in his acts and conduct and in the words spoken to the officers, that is, the falsehoods told the officers, and the deception used

to mislead the officers, he knowingly aided and abetted in the killing of the deceased, Tom Brumley.

On the theory of the state the only issue of fact was whether said defendant, Davis, was present, assisting, aiding, and abetting these outlaws in their attempt to escape, when in order to prevent arrest and to make good his escape the outlaw Moore, alias Carolan, shot and killed T. J. Brumley.

In the case of Polk v. State, 26 Okla. Cr. 283, 224 Pac. 194, 206, it is said:

"It may be stated as a general proposition that no one can be properly convicted of a crime to the commission of which he has never expressly or impliedly given his assent. To hold otherwise would be contrary to natural right and shocking to every sense of justice and humanity. When the accused is present and aiding and abetting another in its commission he may be considered as expressly assenting thereto, so, where he has entered into a conspiracy with others to commit a felony or other crime under such circumstances as will, when tested by experience, probably result in the unlawful taking of human life, he must be presumed to have understood the consequences which might reasonably be expected to flow from carrying into effect such unlawful combination, and also to have assented to the aiding of whatever should reasonably or probably be necessary to accomplish the objects of the conspiracy, even to the taking of life. But further than this the law does not go; for if the accused in such case has not expressly assented to the commission of the crime, and the unlawful enterprise is not of such character as will probably involve the necessity of taking life in carrying it into execution, there can be no implied assent, and consequently no criminal liability. The mere presence of the accused at the scene of the homicide does not make him a criminal; he may have known that a crime was committed, yet, if he did not participate in it directly or indirectly, or encourage the party doing the killing, his

mere presence would not constitute him a principal in the transaction or connect him criminally with the killing."

Our Penal Code declares that:

"Any person who shall knowingly feed, lodge, clothe, arm, equip in whole or in part, harbor, aid, assist or conceal in any manner any person guilty of any felony, or outlaw, or fugitive from justice, or any person seeking to escape arrest for any felony committed within this state or any other state or territory, shall be punished by imprisonment at hard labor in the penitentiary for a period not exceeding ten years." Section 2062, St. 1931.

The evidence shows beyond a doubt that Officer Tom Brumley was murdered in the manner charged, at the home of the defendant, Davis, while attempting with other officers to arrest the aforesaid outlaws and fugitives from justice.

The strongest circumstance against the defendant is that he was harboring these fugitives from justice, and that he made untrue and contradictory statements to the officers well calculated to aid and assist them in avoiding arrest; that he attempted to deceive the officers by telling them first there was only one country boy in the house, then later saying there were only two country boys in the house, and after his second conference in the house with these outlaws, only two of them came out the front door with their hands up, and about that time the third outlaw, going out the back door of the house in attempting to escape and in resisting arrest, fired the shot that killed Officer Brumley.

There are other circumstances in evidence from which a reasonable and logical inference arises that this defendant acted in collusion with the three fugitives from justice in their effort to make their escape; that he thus wilfully

aided, abetted, and assisted in the commission of the crime charged in the information.

Upon a careful consideration of all the testimony, we cannot resist the conclusion that the verdict was fully warranted by the evidence. In such a case, unless there were material errors upon the trial, we have no right to reverse the judgment.

The main contention that the verdict is not supported by sufficient evidence and is contrary to the evidence is thus disposed of.

It is next contended by counsel for the defendant that the court erred in admitting over objections improper rebuttal testimony, prejudicial to the defendant.

The witness J. W. Williams testified that he was a farmer; that he sold about six bushels of corn to the defendant and delivered it at his home on the afternoon of February 2d, and the defendant told him he would settle for it next Monday, then told him to hurry and get away from the house; that witness saw the faces of two, maybe three, men looking out through windows on the east side of the house; that the shades were down, and in order to look out the parties pulled the window shades to one side; that the defendant told him the second time to hurry and get on away from the house.

When the defendant was testifying in his own behalf, he denied that these three parties were at his house on the afternoon of the 2d, and denied knowing anything about their criminal records. This testimony was competent for the purpose of showing that the three outlaws were in the defendant's house on the afternoon of the 2nd of February, 1934; that the defendant knew they were there; and it tended to show that he knew of their criminal

records, because he did not want the witness Williams to see or know who was in the house at that time. When the defendant was testifying in his own behalf, he denied that he and Aussie Elliott were out together on the evening of February 2nd, denied that he knew the boys at the Banner Filling Station, denied that he knew the witness Caton who was working at this filling station, and denied that he and Aussie Elliott stopped at the Banner Filling Station and procured gasoline on the evening of February 2nd.

The witness Caton testified that the Banner Filling Station is on Highway 66 not far from the defendant's home; that he was employed there the past two years; that the evening before the killing the defendant with another man in a Chevrolet car stopped there for gasoline; that he saw the body of Aussie Elliott the next day and he was the man that was with the defendant; that Elliott gave him a $5 bill to pay for the gasoline, and when he gave him back the change, he handed the defendant a dollar; that witness said to the defendant, "Mr. Davis, you owe us eighteen cents on that little account"; the defendant said, "I believe I paid that"; witness said, "The ticket is still here and now is the time to pay it," and the defendant handed the dollar to him and witness gave him back the change; that about three or four weeks before that time the defendant asked him if he would handle some of his liquor, and he told him he did not sell liquor.

It has been repeatedly held by this court that a witness may not be impeached on any matter collateral to the matter in issue with a view of eliciting from such witness an admission at variance between former statements and those testified to on the trial. Payne v. State, 10 Okla. Cr. 314, 136 Pac. 201, 202.

It is equally true, however, that where a matter is relevant to the issue in the cause, and the witness denies having made a statement material thereto, such statement, if contradictory to his testimony given on the trial, may be shown to impeach him. Hartwell v. State, 15 Okla. Cr. 416, 177 Pac. 383.

A careful examination of the record convinces us that the court committed no error in overruling the defendant's objections.

Other questions are raised as to the admissibility of certain testimony. We have examined them and find nothing prejudicial to the rights of the defendant.

The instructions, given by the court to which no objection was made or exception taken, fully covered the law of the case.

After a patient examination of the entire record and giving due weight to every consideration urged by counsel for the defendant, we fail to find reversible error. It appears that the defendant had a fair trial, and that the ends of justice were no more than satisfied by the judgment and sentence appealed from, and our conclusion is that the duty of this court is performed by an affirmance of the same.

The judgment of conviction is therefore affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.