# HENRY METHVIN v. STATE.

No. A-9060.   Sept. 18, 1936.
(60 Pac. [2d] 1062.)

2

4

6

10

12

Frank Nesbitt, J. J. Smith, and J. G. Austin, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, J. (after stating the facts as above). Appellant, Henry Methvin, was convicted in the district court of Ottawa county of the crime of murder, and in pursuance of the verdict of the jury was sentenced to suffer death by electrocution.

The errors assigned and argued will be considered in the order presented in appellant's brief. The first assignment is that: "The evidence is insufficient to sustain a conviction."

It was the theory of the state that the defendant, Methvin, is guilty of murder for the reason that he either actually shot and killed Cal Campbell, or aided and abetted Clyde Barrow in the shooting.

The defendant's theory was that while he was present when the murder of which he was convicted was committed, he was there in the company of Clyde Barrow by compulsion; that he did not fire a shot during the affray which resulted in the murder of Cal Campbell; and that he in no wise aided, abetted, or assisted in the shooting.

It was admitted that the defendants Clyde Barrow, Bonnie Parker, and Henry Methvin were outlaws and fugitives from justice, having escaped from a Texas state prison, and that Cal Campbell, the deceased, was murdered in the manner charged while attempting with another officer to apprehend the aforesaid outlaws and fugitives from justice.

The evidence shows that the fatal shot was fired either by the defendant or by his codefendant, Barrow.

The defendant testified that Barrow did the shooting; that he did not fire a shot. One witness for the state, whose attention was attracted by the noise of the first shots fired and saw the shots afterwards fired, stated that both men near the car in the ditch were shooting. However, assuming that the fatal shot was fired by Barrow, then there is still ample testimony from which the jury could find that the defendant, Methvin, was present aiding and assisting in the commission of the murder. If he were present as an aider and abettor in the commission of the crime, he would be a principal, although the other did the killing.

Our Penal Code, section 1808, St. 1931, provides:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals."

It is urged that the defendant was present at the time under compulsion and that he acted under the impulse of fear that he would himself be killed by his codefendant, Barrow, if he did not obey his orders.

In People v. Repke, 103 Mich. 459, 61 N. W. 861, a threat made three days before a murder, that the respondent would himself be killed if he did not go and assist, was held to be no defense.

In Leach v. State, 99 Tenn. 584, 42 S. W. 195, 197, a request to charge that if the defendant was forced by fear of coconspirators to commit the murder in order to save his own life, he would not be guilty of murder, was held to be properly refused. The court said:

"He could not with any degree of legal palliation elect a course absolutely safe to himself, and slay an in-

nocent man, rather than take some risk to himself in an equal combat with a relentless companion."

In State v. Nargashian, 26 R. I. 299, 58 A. 953, 106 Am. St. Rep. 715, 3 Ann. Cas. 1026, the Rhode Island Supreme Court held:

"The fact that the accused, in assisting in the killing of another, acted under a fear of death imposed by the threats of the person he assisted, does not necessarily eliminate the elements of malice and premeditation so as to reduce the crime to manslaughter."

In the opinion it is said:

"It would be a most dangerous rule if a defendant could shield himself from crime by merely setting up a fear from a threat of a third person."

When the accused is present, aiding and abetting another in the commission of crime, he may be considered as expressly assenting thereto, so where he has entered into a conspiracy with others to commit a felony or other crime under such circumstances as will, when tested by experience, probably result in an unlawful taking of human life, he must be presumed to have understood the consequences which might reasonably be expected to flow from carrying into effect such unlawful combination, and also to have assented to the aiding of whatever should reasonably or probably be necessary to accomplish the objects of the conspiracy, even to the taking of life.

From a careful review of the evidence, our conclusion is that in view of the undisputed facts and circumstances in the case the same does not show any foundation for the defense by reason of fear, even if it could have availed.

In the case of Hargus v. State, 58 Okla. Cr. 301, 54 Pac. (2d) 211, 212, this court held:

"For the purpose of preserving the peace and to prevent crime, a peace officer or private citizen may make reasonable inquiry of persons coming under his observation or brought to his knowledge under circumstances which reasonably suggest that a crime has been or is about to be committed."

In the case of Davis v. State, 59 Okla. Cr. 26, 57 Pac. (2d) 634, this court held that:

"A peace officer has the right without a warrant to arrest a fugitive from justice. The officer being in the right and in the discharge of his duty, the person resisting arrest does so at his peril, and in so doing if he kills the officer, he is guilty of murder if he knew that the person attempting to make the arrest was an officer."

The credibility of the witnesses and the weight to be given their testimony was for the determination of the jury, and in weighing the evidence the jurors must be satisfied beyond a reasonable doubt that it establishes the guilt of the defendant. Evidently the defendant's account of the tragedy did not raise in the minds of the jurors a reasonable doubt of his guilt.

It is a rule of the law that, where the parties act in concert with a common design, they are both alike guilty as principals, and we see no reason to doubt that this conviction was justified and sustained by the evidence.

The second assignment of error is that:

"The court erred in permitting the direct examination of the witness, Percy Boyd, to be read to the jury without reading the testimony of said witness given on cross-examination."

Procedure Criminal, section 3085, St. 1931, provides:

"After the jury have retired for deliberation, if there be a disagreement between them as to any part of the

testimony or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the county attorney and the defendant or his counsel, or after they have been called."

It does not appear from the record that the jury were returned into court and asked to have the testimony of the witness Percy Boyd read. There is no recital in the record proper, or in the case-made, showing that this was done. It appears from the testimony of certain jurors that after having retired for deliberation they were brought into the courtroom and the testimony of the witness Boyd was read by the reporter. There is nothing in the record tending to show that the defendant and his counsel were not present when this information was given, and it does not appear that any objection was made or exception taken.

All presumptions are in favor of the regularity of the proceedings. There being nothing in the record in this case to show irregularity, or, if any, that any objection was made or exception taken, it follows that on the complaint made there is nothing before this court to be reviewed.

This brings us to the only remaining proposition presented in appellant's brief.

It is contended that the defendant did not have a fair and impartial trial, in that the juror John Mayes had formed, and on several occasions expressed, his opinion as to the guilt of the defendant by remarking that in his opinion Henry Methvin ought to get just what Clyde Barrow and Bonnie Parker did, and that was death, and if ever he sat on a jury trying Henry Methvin on that

charge that is what he would give him; that if he were a juror on the trial of said cause that he would give Methvin the electric chair; and other similar remarks at other times. This was one of the grounds of the motion for a new trial as follows:

"That on his voir dire examination said juror stated that he had neither formed or expressed an opinion theretofore as to the guilt or innocence of the defendant on the charge of murder herein made, and had no such opinion at that time; that on general inquiry made by the court if any member of said panel knew of any reason whatsoever that would prevent him from sitting as a qualified juror and giving the defendant a fair and impartial trial in said cause the said juror did not make known his disqualification as hereinafter stated, but proceeded to take the oath as juror in said cause, and participated in the rendition and return of the verdict of 'guilty' in said cause and the return of the death penalty. That in truth and in fact said juror, John Mayes, had formed and many times expressed his opinion that the defendant, Henry Methvin, was guilty of murder as charged in the information herein, and further stated in substance that if he ever sat on a jury trying said defendant on said charge he would not only find him guilty but would insist on the 'death penalty'. And defendant alleges that said juror had said opinion at the time he qualified as said juror and failed to disclose that fact to the court or counsel, and that neither the defendant nor his counsel knew the substance of the statements so made by said John Mayes, nor did they know that he had in fact formed and expressed an opinion as to the guilt or innocence of the defendant and had such opinion at the time the jury was sworn in said cause.

"In support of which allegations on this ground contained the defendant hereto attaches the affidavits of Sam Stewart, Otto Cooper, B. O. White, W. M. Thomason, T. C. Womeldroff, S. L. White, W. S. Potts, Noble Anderson, P. E. Cundiff, M. T. Hall, Carl Lindsay, Maudie

Potts, Harvey Partian, Henry Methvin, J. J. Smith, J. C. Austin, and Frank Nesbitt, and makes the same a part of this motion."

Upon the hearing on the motion for new trial the juror John D. Mayes testified:

"I am 54 years old. I was one of the jurors qualified and accepted on the trial of Henry Methvin, I was in charge of relief work at the time of the first trial and I did not attend and was not in the court room during the first trial; I knew nothing about the case of Henry Methvin and never remarked to any person that if I sat on a jury in the trial of the case that I would give him the electric chair, I never formed nor did I express an opinion as to the guilt or innocence of the defendant, Methvin, to any person or persons, I never did make any statements as set forth in the affidavits or any such in substance to any person at any time; that the jury were out deliberating on their verdict about twenty six hours and it was on the last ballot taken that I voted guilty."

The testimony of the juror Mayes, as to not being present in the courtroom during the first trial, was corroborated by the testimony of the officer acting as door-keeper during the first trial, and was corroborated by the testimony of five jurors as to being one of the three last jurors voting for a conviction.

The state called and examined the persons who made the corroborating affidavits, and also called witnesses to impeach the testimony of said affiants. The transcript of the testimony taken on the hearing is voluminous, consisting of over 200 pages.

It is a settled rule of this court that the finding of the trial court upon a question of fact arising upon affidavits and evidence adduced on a motion for new trial will not be disturbed where the evidence reasonably tends to support such finding. Owen v. State, 13 Okla. Cr. 195,

163 Pac. 548; Horton v. State, 10 Okla. Cr. 294, 136 Pac. 177; Smith v. State, 5 Okla. Cr. 282, 114 Pac. 350.

Without going into a detailed analysis of the testimony taken on the hearing, we hold that the trial judge did not abuse his discretion in refusing to grant a new trial.

The instructions given by the court fully covered the law of the case as applicable to the evidence and were more favorable to the defendant than the law requires.

It is also urged that the punishment assessed and sentence of death imposed is excessive and was the result of passion and prejudice on the part of the jury.

Under the following provision of our Penal Code the punishment to be inflicted for the crime of murder is left to the discretion of the jury:

"Every person convicted of murder shall suffer death, or imprisonment at hard labor in the state penitentiary for life, at the discretion of the jury." Section 2222, St. 1931.

The verdict of the jury is conclusive upon the trial court, and the court below is without power or authority to render judgment and sentence except in accordance with the verdict. On appeal, however, our Procedure Criminal provides that:

"The appellate court may reverse, affirm or modify the judgment appealed from, and may, if necessary or proper, order a new trial." Section 3204, St. 1931.

In the case of Wilson v. State, 17 Okla. Cr. 47, 183 Pac. 613, 620, it is said:

"By this provision it seems to have been the intention of the Legislature to vest this court with power to modify the judgment, when such a course would be in furtherance of justice and conduce to the humane administration of the law. In a capital case it is the duty of

this court to examine, with the greatest care, the whole record in favor of life, and review the case upon the merits to determine whether justice requires a modification of the judgment to imprisonment for life."

And see Fritz v. State, 8 Okla. Cr. 342, 128 Pac. 170; Anthony v. State, 12 Okla. Cr. 494, 159 Pac. 934; Owen v. State, 13 Okla. Cr. 195, 163 Pac. 548; Westbrook v. State, 14 Okla. Cr. 423, 172 Pac. 464; Chambers v. State, 16 Okla. Cr. 238, 182 Pac. 714; McConnell v. State, 18 Okla. Cr. 688, 197 Pac. 521; Young v. State, 19 Okla. Cr. 363, 200 Pac. 260; Phillips v. State, 27 Okla. Cr. 108, 225 Pac. 180.

The law regards human life as the most sacred of all interests committed to its protection; and no more solemn duty can be imposed upon the courts than the duty of protecting, and the duty of taking, human life. To take the life of a human being is an awful thing even when it is taken by the law in the due administration of justice.

In this case it appears that on the defendant's first trial the jury failed to agree, and while we think the defense by reason of fear entirely failed and was properly discredited by the jury, yet it appears that the defendant had agreed with the authorities in Louisiana to aid and assist federal and state officers to apprehend his codefendants, Clyde Barrow and Bonnie Parker, and in pursuance of said agreement did give to the authorities in Louisiana information that lead to their justifiable killing by officers of the law.

For the reasons stated, we are of opinion that the punishment imposed is excessive, and that justice requires a modification of the judgment and sentence of death to that of imprisonment at hard labor in the penitentiary for life, and as thus modified the judgment is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.