Roy Ivan BUFFALOW, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12061.

Criminal Court of Appeals of Oklahoma.

Jan. 19, 1955.

Rehearing Denied Feb. 16, 1955.

R. H. Morgan, Watonga, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Roy Ivan Buffalow, plaintiff in error, hereinafter referred to as defendant, was charged by information in the county court of Beaver County with the offense of driving a motor vehicle on a public highway while under the influence of intoxicating liquor. The case was tried to a jury, which found the defendant guilty as charged, but being unable to agree upon the punishment to be assessed left that to the court, who fixed punishment at thirty days confinement in the county jail, and a fine of $100 and costs.

The evidence discloses that the defendant operated a farm west of Forgan, and about 7:00 P.M. of an October day Highway Patrolman John Leech was driving west on U.S. Highway 64 about one mile west of Forgan when he met the defendant driving a car east toward Forgan. The car seemed to be weaving in its lane of traffic, and when opposite the officer, swerved so that Mr. Leech had to drive out partially onto the shoulder of the road. He turned his car around, overtook the defendant, who was driving slowly, and had him get out of his car. Witness detected the odor of alcohol about defendant, observed an impediment of speech, and concluded that he was under the influence of alcohol, and took him to the county jail at Beaver. A man companion of the defendant who also smelled of alcohol was "turned loose" as the officer put it. The officer did not drive defendant's car or have information that the steering apparatus was defective, or have knowledge that defendant had a natural impediment of speech, he admitted on cross-examination. He also admitted that there was a high wind at the time of observing defendant's driving.

The jailer, Mac Walter, testified that when officer Leech arrived at the jail with the defendant, Mr. Buffalow wanted a doctor and he tried to call Dr. McGrew, who was out of town, and he did not try to get another doctor, because to his knowledge such would have been useless, as they would not come to the jail. Witness smelled alcohol about the person of the defendant, and noticed that he had a tendency to fall backward in going up some steep steps to the jail, on the second floor. He concluded that defendant was under the influence of intoxicants. On cross-examination with reference to the stairs being difficult to climb, he said that perhaps heavy people had difficulty in climbing them, but if not intoxicated most people would not have any trouble.

The defendant offered the evidence of a number of high school age boys who had been working on his farm the day of the arrest. They were to meet defendant in Forgan for their pay. They denied having any knowledge of defendant having drunk intoxicants that day, and testified that prior to leaving the field before sun-down he had appeared normal. Wayne Mayo, one of the workers, testified that the defendant does not talk too distinctly; that he "sort of mumbles".

The defendant testified, and said that on the day of his arrest he had been binding feed on his farm, and had a number of young men of Forgan helping him; that about 6 P.M. he left for Forgan to get money to pay the workers, who were to come on to town and meet him. He denied that he had been drinking or was intoxicated at the time the patrolman stopped and arrested him. He claimed that his steering gear was defective and that after getting out of jail it cost him $64 to get it fixed. He claimed that he had been down with rheumatic fever for about two years and, was more or less crippled. He said that when the red light was thrown on him and the patrolman sounded the siren it frightened him, and made him nervous.

The county attorney asked defendant if he did not go to Turpin prior to driving to Forgan after leaving his farm. Defendant answered "No, sir". He was then asked: "Did you tell the highway patrolman at the time he picked you up that you came by Turpin and got something to drink?" Defendant answered, "No, sir". He then denied having anything to drink at all. The court overruled an objection to this line of cross-examination, which was a correct ruling, providing the county attorney had produced the highway patrolman on rebuttal to have shown that the defendant did in fact make such a statement. This was not done.

■■■ We conclude from the record that a fact question was presented and that it was in the province of the jury to determine the issue as to defendant's intoxication. Sadler v. State, 84 Okl.Cr. 97, 179 P.2d 479.

■■ As to the damaging question asked, not later supported by proof, the same principle is involved as where a county attorney in his opening statement attributed to the wife of an accused certain damaging statements and accusations made to accused in the presence of others, and not shown to have been denied, but where the State offered no proof in support of such assertions. See Hilyard v. State, 90 Okl.Cr. 435, 214 P.2d 953, 28 A.L.R.2d 961.

It is the conclusion of this court, therefore, that the judgment must be affirmed, but by reason of the conflict in the evidence and the failure of the county attorney to support by testimony the above recited question asked defendant on cross-examination, indicating defendant's admission of having consumed intoxicants just prior to his arrest, that such question was prejudicial. While we think from the evidence as a whole that the error is not sufficient to cause a reversal of this case, we do think that under the circumstances that fairness impels a modification of the judgment by omitting the jail sentence; and as thus modified, the judgment appealed from is affirmed.

JONES, P. J., and BRETT, J., concur.

### On Motion for Rehearing

POWELL, Judge.

The Criminal Court of Appeals in misdemeanor cases is not required to render a written opinion. Tit. 20 O.S.1951 § 47. We are permitted to do so, however, and usually do, where in our judgment the public interest may be subserved. So that in our opinion heretofore filed in this case, we treated all propositions supported by the record and that seemed to require treatment. And while the evidence was ample to support the verdict of the jury and the judgment entered, we did by reason of some prejudicial matter, not raised by appellant but shown by the record, remit the jail sentence. In addition to the reasons recited, we have considered the testimony of the accused that he had suffered from arthritis for over two years, and also the fact that he had spent long hours in the fields of his farm, directing workers, on the day he was arrested while driving from this farm in the evening. We went far to give him some relief, and it may be too far.

Counsel now, still not satisfied, urges a re-hearing and a new trial, when from the evidence, with the matter eliminated we used as a basis for modifying the judgment, the defendant would in all probability receive a much more severe sentence.

The foundation now for complaint involves grounds set up in an amended motion for new trial filed in the trial court after judgment had been entered and the original motion had been overruled and notice of appeal given. This amended motion for new trial had attached to it an affidavit of the trial attorney, pertaining to matters nowhere disclosed by the record made at trial. It involved the request by the jury through the bailiff that they be conducted to the court room "for more information", the alleged failure of the court reporter being asked to take down the statements made by the bailiff, the statements made by the foreman of the jury to the court, and the reply of the court. It was alleged that the bailiff had advised the court that the jurors "wanted to know whether the defendant had to be helped up the steps of the court house by the officer or the jailer after his arrest." It was alleged that the court, after the jury was conducted into the court room, advised them that they should resort to their memory concerning the evidence they wanted read. So far as the record discloses, no evidence was introduced to support the amended motion and the court overruled the same on November 19, 1953.

On February 2, 1954 the court on application of new counsel in the case, permitted the case-made to be amended to show the following as covering the facts with reference to the request of the jury:

"Jury retired to jury room for deliberation. Bailiff returned to courtroom alone and conversed with county judge out of hearing of court reporter; county attorney and defense counsel then conversed with county judge in presence of bailiff and out of the hearing of the court reporter; county judge advised counsel that bailiff had informed him that the jury wanted the testimony of the highway patrolman and jailer read to them; bailiff then retired and brought jury to courtroom where the jury foreman made request to county judge that testimony of highway patrolman and jailer be read to them; county judge advised jury that

testimony of witnesses could not be read to jury. Done in open court this 2nd day of February, 1954."

The record shows that the arresting officer with reference to the stair steps testified on direct examination:

"Q. Did you have any trouble getting him upstairs? A. Yes.

"Q. Describe the trouble you had. A. He was very unsteady. Tendency to fall backwards."

The record further shows that the jailer testified to the defendant being intoxicated when placed in jail, and that on cross-examination defense counsel asked him:

"Q. Mac, what other indications were there when they brought him to jail that he was intoxicated? A. The way he tried to get up the steps.

"Q. Is it normal for them to go up the steps without too much trouble? A. No one can come up if not too loaded and in good shape."

The defendant as to his difficulty in negotiating the steps testified:

"Q. Roy, you heard the testimony given about you having trouble going up the steps. Did you have any trouble going up them? A. No. I've been down with rheumatism for two years and I get along kindly crippled."

Only the stipulation deserved any consideration. The bailiff having been sent by the jury to advise the court that they wanted to hear the testimony of the highway patrolman and the jailer, would naturally seek out the court first, which he did, and then the court called counsel for the State and for the defendant to the bench and advised them about the jury. It was incumbent upon trial counsel to have seen that the court reporter was called and that she made a record of the statement of the bailiff, and of the judge and noted any objections interposed, and after the jury was present in court, record the remarks of the jury, the court and counsel.

If there was a question as to the bailiff's conduct, he should have been questioned so as to lay a predicate for a motion that a

mistrial be declared. The bailiff was not even called as a witness on amended motion for new trial. In fact, no evidence was heard.

There were but two witnesses who testified for the State, so even if the jury foreman did direct the bailiff to say to the court that they wanted to have read to them certain evidence of the highway patrolman and the jailer, such standing alone would not in this case be sufficient to cause a reversal.

The testimony it is said the jury wanted re-read, and quoted above, was strictly against the defendant. The record does not show just what the court said to the jury. Trial counsel must have been satisfied, as he raised no objection, nor did he out of the presence of the jury suggest any stipulation to the court of the facts, should the court reporter have been unable to read her notes, or had she temporarily departed after the jury commenced considering the case.

No objection was raised in the original motion for new trial, and in the amended motion for new trial the affidavit attached was wholly insufficient, and the court did not err, so far as we can ascertain from the record, in overruling such amended motion. The stipulation as to alleged facts comes as an amendment to the case-made on appeal and so far as we can discover was never urged before the county judge as a basis for new trial.

We have uniformly held that the presumption is that all proceedings in a court of record are regular, and the burden is upon him who assails such proceedings to show clearly the irregularities complained of. Denmark v. State, 71 Okl.Cr. 424, 112 P.2d 437, 113 P.2d 608; Nowlin v. State, 65 Okl.Cr. 165, 83 P.2d 601; Methvin v. State, 60 Okl.Cr. 1, 60 P.2d 1062.

Tit. 22 O.S.1951 § 894 provides that after jurors have begun their deliberations that if they want more information on a point they must require the officer to conduct them into court, and the information must be given in the presence of, or after notice to the county attorney and the defendant or his counsel, or after they have been called.

While from the stipulation there is an apparent irregularity in the statement that "County judge advised jury that testimony of witnesses could not be read to jury", we repeat that no record was made of the proceedings, and although counsel was present he interposed no objection to the alleged conclusion of the court. And from what we have said, the irregularity concerning the failure to read the testimony of the two officers with reference to the difficulty the defendant had in negotiating the steps to the jail, was in favor of the defendant, if such happened, as the evidence was against him, and would have been emphasized, and counsel for the defendant would have had good reason to have not wanted it read, and to have not insisted that the court reporter be called. Defendant can not now take advantage of such failure.

After careful re-study of the record, we conclude that the irregularity made to appear by the amendment to the case-made, and where no objection or exception was taken, and where there is no sufficient record to enable the reviewing authority to intelligently explore the complaint made, and where the record as a whole discloses ample evidence to support the verdict of guilt to the charge, discloses at most an irregularity amounting to harmless error.

As said in Williams v. State, 12 Okl.Cr. 39, 151 P. 900, 901, and approved in Bradley v. State, 63 Okl.Cr. 203, 74 P.2d 126:

"Only prejudicial errors raised by exceptions reserved require a new trial, and it is only when we are satisfied that the verdict was contrary to law, or to the evidence, or that injustice has been done, that we are permitted to reverse a conviction, whether or not an exception has been taken in the trial court."

The petition for rehearing is denied, and the Clerk of this court is directed to issue the mandate forthwith.

JONES, P. J., and BRETT, J., concur.