# ARNOLD v. STATE.

No. A-11673.  Jan. 14, 1953.

(252 P. 2d 941.)

O. H. Whitt, McAlester, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Ass't Att'y Gen., for defendant in error.

BRETT, J. Plaintiff in error, Chester Arnold, defendant below, was charged in the county court of Pittsburg county, Oklahoma, with the offense of driving a certain motor vehicle upon and along the 400 block on West Grand Avenue in the city of McAlester, Oklahoma, while under the influence of intoxicating liquor in violation of the provisions of Title 47, § 93, O.S A. 1941. The offense was allegedly committed on April 24, 1951. The defendant was tried, convicted by a jury, his punishment fixed at a fine of $50 and 60 days in jail; judgment and sentence was entered accordingly, from which this appeal has been perfected.

The defendant urges two propositions, first, the jury was not properly instructed in that the trial court did not instruct the jury on the theory of the defendant's defense. The evidence offered by the state and the defendant is not long and in substance is as follows, to-wit: The defense was that while the defendant denied he was drunk on intoxicating liquor, he testified that he was sick as a result of having taken a prescription of banthine, a drug taken internally for the treatment of peptic ulcers. He said he was in such pain the day in question that he took 3 banthine pills, one about every two hours notwithstanding the prescription called for them to be taken only one every six hours. He testified that this drug made him dizzy, and his throat dry. He admitted that he drank one bottle of beer about 3:30 that afternoon. He related that just before he left in his truck for home he was at Stapp's Beer Parlor at about 6:30 or 7:00 p. m., that he was driving home and became so dizzy he tried to pull his truck up on the curb, then he thought he better pull off to the left which he did and the truck "kinda rolled" down when the highway patrolman pulled up and he stopped. The defendant testified in chief that he had been to police court eight times for drunkenness.

Dr. Harkins appeared as a witness for the defendant, and testified that he prescribed banthine for the defendant as a peptic ulcer treatment. The doctor further related that banthine affected persons in various ways. He stated that on some people it caused a dilation of the pupils of the eyes, thus impairing their vision. It also produces a dryness in the mouth and thickness of the tongue resulting in defective speech and sometimes causes difficulty in locomotion or ability to walk. He also related that in some persons it produces a shuffling or staggering gait. He testified he prescribed banthine for the defendant on April 17, 1951, and he did not know whether the defendant was taking it or not at the time of his arrest on the 24th of April, 1951. He further testified he advised against drinking beer or intoxicants while taking banthine. He admitted, however, that he did not know the effect of mixing banthine and alcoholic beverages. On this evidence the defendant requested a written instruction which the trial court refused, with exceptions. The instruction was, in substance, as follows, to-wit:

"Gentlemen of the Jury you are instructed that the defendant's theory of the case is that for sometime prior to his arrest he had been suffering with a stomach disorder and a back condition, and that at the time of his arrest he was under treatment for said conditions by a Physician; that said Physician had prescribed for him a medicine known as Banthine and had been taking said medicine during the day of his arrest, that at the time of his arrest he was not under the influence of intoxicating liquor of any kind. That the medicine

he had taken did make him sick and groggy and that the medicine he had taken caused whatever abnormal condition he was in, if you believe that or if you have a reasonable doubt thereof, it will be your duty to find him not guilty and acquit him."

We call attention to the fact that the instruction was defective in that the record nowhere supports any complaint on the back condition as set forth in the instruction.

In considering this contention, it has been repeatedly held by this court that it is not error to refuse to give a requested instruction if the law covered by the requested instruction is fully covered by the court's general instructions. Williams v. State, 63 Okla. Cr. 234, 74 P. 2d 632. In the Williams case the defense was that the defendant was not drunk but under the influence of amytal tablets. Therein the trial court's general instruction covered the defense. Herein the general instructions did not in any respect cover the defendant's defense. Under the law the defendant was entitled to an instruction covering his defense. In Adams v. State, 93 Okla. Cr. 333, 228 P. 2d 195, we said:

"It is error for the trial court to fail and refuse to instruct on the law applicable to a theory of the defense which the evidence tends to support, especially when requested by defendant." Daniel v. State, 67 Okla. Cr. 174, 93 P. 2d 47; Scott v. State, 40 Okla. Cr. 296, 268 P. 312; Crossett v. State, 96 Okla. Cr. —, 252 P. 2d 150.

In Taylor v. State, 94 Okla. Cr. 368, 236 P. 2d 270, the defense was that Taylor was not drunk on intoxicants but appeared to be as a result of having taken antihistimine tablets. However, he admitted he had drunk a little eggnog about noon the day in question. The Taylor case was affirmed because the record did not disclose a request in writing for the giving of such an instruction covering the theory of defense, and because under the record therewith presented it did not appear the defendant was deprived of any substantial rights. Herein the requested instruction was reduced to writing and presented, and denied by the trial court with exceptions. If the requested instruction had been given in conformity with the defense, the defendant herein would have had no ground for complaint. The situation would have been as has been revealed in Kessler v. State, 136 Tex. Cr. R. 340, 125 S.W. 2d 308, 309:

"Appellant next contends that the court erred in declining to give her special requested instruction to the effect that if she was intoxicated on the night in question from the combined use of amytal and whisky to acquit her. We are of the opinion that she was not entitled to such an instruction. If she indulged in the use of amytal to such an extent that she thereby made herself more susceptible to the influence of intoxicating liquor than she otherwise would have been and by reason thereof became intoxicated from the recent use of ardent spirits, she would be in the same position as though her intoxication was produced by the use of whisky alone. A person who gets himself in a condition whereby he may become intoxicated from a lesser quantity of whisky than it would ordinarily take to produce intoxication is nevertheless intoxicated from the use of whisky.

"We note, however, that the court in his main charge instructed the jury that if they believed from the evidence that appellant was drunk from the use of amytal, or if they had a reasonable doubt thereof, to acquit her. This was all she was entitled to."

If the instruction setting forth the defendant's defense had been given herein presenting the defendant's theory of defense, we would be compelled to affirm the judgment and sentence just as was done in the Kessler case supra, but clearly such is not the situation in the case at bar.

The defendant's second proposition was that the judgment and sentence is excessive, unusual, cruel and unjust. It is obvious that this contention is without merit in light of the fact that the defendant admittedly had been before the police court eight different times for drunkenness, and further admitted that on several occasions he became intoxicated and hired somebody else to drive his truck home. Especially is this contention without merit in light of the evidence offered by the state through the highway patrolman, to the effect that the defendant drove his car at the time and place as described in the information; that he was driving very slowly and seemed to be trying to get the truck up on the curb and sidewalk; that the patrolman sounded his horn and siren and came alongside the defendant and the defendant persisted in driving on down the street for approximately 50 or 75 feet. After the defendant stopped his car the patrolman related that he was ordered to get out of the car and instead of getting out he sat there. The patrolman related that he opened the car door and the defendant got out and was so groggy he could hardly stand up. He was asked what he had been drinking, to which the defendant replied, "He had drank one beer too much—yes, I had drunk one beer too many, I guess, let's go". The patrolman related that the defendant was very talkative, wobbly and staggering on his feet and had the smell of alcoholic beverages on his breath. It was his testimony based upon his observations and his experience with other drunks that the defendant was highly intoxicated. It is sufficient to say that in this connection the evidence though conflicting presented an issue for the jury to determine, and would be sufficient to sustain the judgment and sentence were it not for the error hereinbefore pointed out. By reason of all the matters as hereinbefore set forth, the judgment and sentence herein is accordingly reversed and remanded with directions to re-try the defendant under proper instructions.

POWELL, P. J., and JONES, J., concur.