**Gordon Neal SMITH, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

No. F–83–249.

Court of Criminal Appeals of Oklahoma.

July 17, 1985.

Robert L. Whittaker, Asst. Public Defender, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Thomas L. Spencer, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

BRETT, Judge:

Gordon Neal Smith, the appellant herein, was convicted of Embezzlement by Employee, After Former Conviction of a Felony in violation of 21 O.S.1981, §§ 1456 and 51 in Case No. CRF–81–5771 in the District Court of Oklahoma County. He was represented by counsel and tried by a jury, with the Honorable Homer Smith presiding. He was sentenced to twenty-one (21) years' imprisonment, and judgment and sentence was imposed in accordance with the jury's verdict.

In May of 1981, William Gooden took a job at the Molly Kathleen Gold Mine in Cripple Creek, Colorado. The Molly Kathleen is a gift shop that caters to tourists in the sale of gold jewelry. The shop was owned by George King. King agreed to educate Gooden in the workings of the retail gold business so that Gooden could start his own gold business in Oklahoma, in exchange for Gooden's services throughout Cripple Creek's 1981 tourist season. During this time Gooden became friends with the appellant, who also worked for King as a tour guide in the mine.

At the end of Cripple Creek's tourist season, Gooden began searching for a location in Oklahoma to open his own gold store. He leased a shop in the Sheraton Century Center and opened for business on

November 23, 1981, as "Gold of Oklahoma". The appellant and his wife attended the grand opening and appellant assist-.ed in the sale of jewelry.

Sherry Potter, a friend of Gooden's, was also at the grand opening. She was in the process of building a nightclub in Clinton, Oklahoma, and was looking for people to work for her. The appellant and his wife agreed to move to Clinton and work for Potter. Although the club was not yet completed, Potter put appellant on her payroll. Potter created work for the appellant by having him do odd jobs awaiting the club's completion.

Gooden and Potter planned a trip to Dallas to buy gold for Gooden's store. They were to be gone from December 12 through 14, 1981. Potter, who owned stock in Gold of Oklahoma, agreed to have the appellant open and work at the store on Monday, December 14th.

On the morning of the 14th, the manager of a restaurant located directly across from Gold of Oklahoma, saw the appellant inside Gooden's store. The manager noticed the store was closed and the lights were off after lunch.

When Gooden and Potter returned, appellant was missing along with a van that belonged to Gooden, which was later located in the longterm parking lot at Will Rogers World Airport with a time ticket on the vehicle dated December 14, 1981, 1:42 p.m. Property was discovered missing from the store which was valued at about $85,000.

The appellant was traced to Houston, where he sold some of the gold for cash and then flew to Arizona and Chicago and then back to Houston. Appellant was arrested at the Denver Airport on February 16, 1982. The appellant told an FBI agent on February 17, 1982, that he "suffered a blackout" on December 14, 1981, and woke up in the Hyatt Regency in Houston. On March 16, 1982, the appellant retracted his February 17, 1982, ·statement and claimed that George King, his ex-employer from Cripple Creek, had threatened to turn the defendant over to Nevada law enforcement officers for past crimes and to harm the defendant's wife if he did not help King destroy Gooden's business.

The appellant's sole assignment of error alleges that the trial court erred in refusing to instruct the jury on the defense of duress. Title 21 O.S.1981, § 155, provides:

> The involuntary subjection to the power of a superior which exonerates a person charged with a criminal act or omission from punishment thereof, arises from duress.

Title 21 O.S.1981, § 156, provides:

> The duress which excuses a person from punishment who has committed a prohibited act or omission must be an actual compulsion by use of force or fear.

The duress defense has been an appellate issue in Oklahoma on only two occasions. Both cases, however, are distinguishable from the case at bar. In *Methvin v. State*, 60 Okl.Cr. 1, 60 P.2d 1062 (1936), the Court dealt with a homicide case which has traditionally precluded the availability of a duress defense. In *Denson v. State*, 481 P.2d 190 (Okl.Cr.1970), the Court held that the defendant's testimony disproved duress because she did not even know that the co-defendant was committing the larceny at the time she claimed to be under duress to assist him. "Her testimony does not indicate, even by inference, that she participated in the crime, because of 'actual compulsion by use of force of fear' as required by the statute ...." *Id.*

The Supreme Court of the United States stated in *United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980), that: "Under any definition of [duress] ... one principle remains constant: if there was a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm, the defense will fail."

█ The appellant has shown no attempt on his part to escape the alleged threat or to seek the assistance of law enforcement officials, or explore any other alternatives to committing the crime. The appellant was not being forced to make a split second

decision with a loaded gun at his, or his wife's, back.

 It is true that it is error for the trial court to fail and refuse to instruct on the law applicable to a theory of the defense which the evidence tends to support, especially when requested by appellant. *Arnold v. State,* 96 Okl.Cr. 266, 252 P.2d 941 (1953). The evidence in the present case, however, does not support such an instruction on the defense of duress under *Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575. Therefore, after reviewing the evidence, we conclude that the trial court did not err in failing to instruct the jury on the defense of duress. Accordingly, the judgment and sentence is hereby AFFIRMED.

PARKS, P.J., specially concurs.

BUSSEY, J., concurs.

PARKS, Presiding Judge, Specially concurring:

I concur with Judge Brett's holding that the appellant was not entitled to an instruction on the defense of duress. However, I cannot agree with the blanket statement that this defense is traditionally unavailable in homicide cases. I believe exceptions exist to this general rule, such as in the case of felony-murder. *See* LaFave & Scott, *Criminal Law,* § 49, p. 377 (1972).