**Richard Lee COTHRUM, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–16124.**

Court of Criminal Appeals of Oklahoma.

Sept. 7, 1972.

Rehearing Denied Dec. 18, 1972.

Richard Lee Cothrum, pro se.

Larry Derryberry, Atty. Gen., for appellee.

## DECISION AND OPINION

BRETT, Judge:

Appellant, Richard Lee Cothrum, hereafter referred to as defendant, was tried by a jury in the District Court of Oklahoma County for the offense of Uttering a Forged Prescription, After Former Conviction of a Felony, in that court's case no. CRF–69–1636; the jury found defendant guilty and at the closing of the second stage of the proceedings, the jury assessed defendant's punishment at fifteen years confinement under the direction and control of the State Department of Corrections. From that judgment and sentence this appeal has been perfected. We affirm.

The facts reveal that on or about July 12, 1969, defendant allegedly presented a forged prescription at the Ridgecrest Pharmacy in Oklahoma City. In his trial the defendant was identified by Mr. Charles

Farris, an intern pharmacist at the pharmacy. Mr. Farris identified the prescription which was presented to him for filling, and identified defendant as being the man who presented it to him and paid for the prescription. Because of minor discrepancies on the prescription, Mr. Farris became suspicious and it was subsequently determined to be a forged prescription. The pharmacist at the Ridgecrest Pharmacy, Miss Ann Cowans, testified concerning the prescription, and after the discrepancies were brought to her attention by Mr. Farris, she called the office of Dr. John R. McInnis, who allegedly issued the prescription. She stated that she was advised by the Doctor's office that Dr. McInnis was in New York City. The prescription having allegedly been issued on July 11, 1969, she concluded that it was impossible for him to have signed the prescription, so she notified the police. She stated that the police detectives brought six photographs when they came out to investigate, and among the photographs was that of the defendant. She related that she did not see the defendant when he came into the pharmacy, that Mr. Farris waited on defendant.

Dr. John R. McInnis testified and stated that the prescription was not issued by him, and that the signature thereon was not his. Officer Henderson of the Oklahoma City Police Department testified concerning his investigation with Officer Huckaby. He related that both detectives went to the pharmacy with the photographs, made inquiry concerning the manner in which the prescription was presented, and showed the six photographs to the two pharmacists. He related that after Mr. Farris identified the picture of defendant he and Officer Huckaby went to defendant's home, but were unable to find him there. They then went to a known friend of defendant, a Mr. De Loren Pierce, and when they arrived at the Pierce residence they saw defendant's car parked there. Officer Henderson related that he went to the front door and knocked; and Officer Huckaby went to the back door of the house. After a brief period of time the front door was opened to him and he entered, searching for defendant. He was unable to find him in the house, but when he reached the back yard Officer Huckaby had defendant in custody.

Officer Huckaby testified to essentially the same facts; he related further that when Officer Henderson entered the house he observed defendant drop something out of the back window, after which he proceeded out of the window himself and started walking quickly away from the house. Officer Huckaby apprehended the defendant and took from him a vial containing six blue tablets which were identified as being the same type tablet as the initial twenty-four obtained by the forged prescription. Defendant was subsequently charged with uttering a forged prescription. At the conclusion of Officer Huckaby's testimony the State rested its case.

Defendant called as his witness Mr. Charles Farris, the intern pharmacist, and attempted to cause him to change his story, without success. He then called Marilyn Pierce, the ex-wife of De Loren Pierce, at whose residence defendant was found. She was unable to state with certainty whether defendant was in the house or in the back yard, or where he might have been, except that he was there that day helping her clean the house.

Defendant called Dr. Leonhardt Rozin, who testified that he had earlier issued two prescriptions for defendant, one of which was for a narcotic drug, Numorphane, and another for a sulfa-type drug. Defendant called Mr. B. J. Mitchell, the owner of the Ridgecrest Pharmacy, as his next witness. Mr. Mitchell identified certain prescriptions which had been legally issued to the defendant during the period in question, and stated that Dr. Rozin's prescription was filled on June 5, 1969. He identified other prescriptions which had been filled for defendant, but all were before June 12, 1969, when the alleged forgery occurred. At the conclusion of this witness' testimony, the defense rested.

The appeal from this conviction was filed by the Public Defender for the defendant; but no brief was submitted with the petition in error and records. The defendant specifically stated to the trial court, and this Court, by written motions and letters as well, that he did not want the public defender to file his appeal or to file a brief in his appeal. In lieu of a brief the defendant has filed numerous pleadings, all of which have been considered and found to be without merit for the purpose they were filed. However, from those pleadings the Court is able to gain some indication concerning defendant's complaints about his trial and conviction; and because no brief has been filed, we have carefully examined the record before the Court.

■ The record reflects that defendant had several attorneys prior to his trial each of whom was for some reason or another dismissed by the defendant. Prior to trial his first attorney filed a demurrer to the information and a motion to quash the jury panel. Both motions were properly denied, allowing defendant's exceptions. Between the time the charge was filed and the time for trial, both the State and the defendant were granted continuances upon their separate requests. Defendant may not indefinitely delay his trial through series of changes in legal counsel. Thompson v. State, Okl.Cr., 462 P.2d 299 (1969).

■ When defendant's trial was called on April 9, 1970, in open court defendant discharged his retained counsel and stated he would defend himself with appointed counsel sitting at the table with him. After explaining his right to counsel, the court agreed with defendant's decision and announced that trial would be commenced the following morning. The court then instructed the court clerk to issue subpoenas for all witnesses defendant designated. Throughout the trial defendant acted as his own counsel. Defendant may waive any constitutional right which is largely for the benefit of accused or in the nature of a personal privilege, including his right to counsel, so long as he does so knowingly and intelligently. Tanner v. State, Okl.Cr., 381 P.2d 888 (1963); Thompson v. State, supra; Carney v. State, Okl.Cr., 406 P.2d 1003 (1965); People v. Pitman, 25 A.D.2d 637, 268 N.Y.S.2d 83; Danks v. State, 18 Utah 2d 212, 418 P.2d 488. United States v. Dougherty, CA, DC, 6/30/72, 11 Cr.L. 2337.

■ Immediately prior to trial defendant filed "pro se" a motion to quash the information for the reason he was not indicted by a grand jury, but this Court has long held that such complaint is without merit. Hawkins v. State, Okl.Cr., 440 P.2d 991 (1968); Morgan v. State, 15 Okl.Cr. 158, 175 P. 625 (1918). He also complained that the former convictions used in the second stage of the proceedings were improper, asserting that he was found not guilty on those charges. However, the charges to which he makes reference were not listed on the information to support the former conviction charge. The State listed conviction number 30733, for Possession of Narcotics, After Former Conviction of a Felony; and conviction number 30762, for Possession of Narcotics, After Former Conviction of a Felony, in both of which defendant entered a plea of guilty with retained counsel, Mr. Carroll Samara, being present; and in both of which on September 20, 1965, defendant was sentenced to five years imprisonment with the provision that the sentences were to run concurrently. The records of those convictions were identified by Mr. Larry Morgan, Deputy Court Clerk; and defendant was identified in court as being the same person formerly convicted, by Mr. Tom Harley who served as Assistant District Attorney and was present in the court at the time defendant sustained both convictions.

During the second stage of the proceedings defendant asserted—and attempted to prove—that he made an effort to appeal the two above convictions; however, the records of this Court do not reflect any such attempt being made in this Court. Defendant filed a petition for a writ of mandamus relating to a subsequent matter

pending in the District Court of Oklahoma County, but that was denied and is reported as Cothrum v. Parr, Okl.Cr., 426 P.2d 382 (1967).

Another complaint lodged by defendant is that the trial judge prejudiced him in the eyes of the jury when he explained to the jury that the defendant had fired his legal counsel and was consequently representing himself. While that part of the prosecutor's opening statement is not contained in the record, at page 162 of the record, when defendant was attempting to argue his motion for mistrial and motion to set aside the jury verdict, the following appears:

"MR. COTHRUM: And that Your Honor set the Jury's conviction aside on the grounds that I received, through your opening statement, through your statement to the Jury, directly to the jury, you give reason why I did not have the lawyer which did not pertain to the jury.

"THE COURT: What—when do you say I said anything?

"MR. COTHRUM: When Mr.—when Mr. Ryan was making his opening statement, he was just telling them why that I was defending myself and you tried to clarify the matter for him to the jury by making remarks I had ample chance to have a lawyer and I fired him.

"THE COURT: Well, I was just simply explaining why you were—don't—let those be overruled.

"MR. COTHRUM: Exceptions allowed?

"THE COURT: Yes, sir, certainly."

There exists little doubt in this Court's mind that the evidence sustained the jury's verdict finding the defendant guilty of the charge. We doubt that the trial judge's remarks may have prejudiced the jury in assessing the punishment. When instructing the jury on the second stage of the proceedings, instruction number four instructed the jury concerning the punish-

ment for: The first offense of uttering a forged prescription; for uttering a forged prescription after one former conviction related to narcotic drugs; and lastly, instructed:

"UTTERING A FORGED PRESCRIPTION, after having been convicted two or more times, or on the third offense, relating to narcotic drugs, this is punishable by imprisonment in the State Penitentiary for a term of not less than ten (10) years or more than twenty (20) years or fined not more than $5,000."

The instant conviction was defendant's third conviction related to narcotic drugs and he could have been sentenced to a maximum of twenty (20) years imprisonment, but the jury chose not to assess the maximum. We are left to conclude that the trial judge's remarks, as complained of by defendant, were not so prejudicial as he would attempt to lead this Court to believe. Otherwise, defendant would have received the maximum sentence. This Court held in Simpson v. State, Okl.Cr., 304 P.2d 1004, which is applicable to this case:

"A verdict will not be set aside by reviewing court on ground that punishment is excessive, unless it appears that jury acted from bias or prejudice and that the punishment assessed bears no reasonable relation to the crime committed."

Because of the unique nature of this trial, we have carefully considered the record before the Court, including all the "pro se" pleadings filed by defendant; and we do not find error sufficient to disturb the verdict of the jury, or the punishment assessed. The court's instructions to the jury were proper; and except for the defendant's insistence that he be allowed to represent himself, nothing of unusual nature would have otherwise appeared in the record. But because the trial court insisted that the defendant have legal counsel present to assist the defendant, we cannot say that defendant was not assured all his constitutional rights to legal counsel. From the record of trial, defendant re-

ceived a fair trial in accordance with due process of law; and we conclude that the judgment and sentence imposed in District Court, Oklahoma County, Oklahoma Case No. CRF–69–1636, should be affirmed.

It is so ordered.

BUSSEY, P. J., and SIMMS, J., concur.

## ON REHEARING

BUSSEY, Presiding Judge:

This cause was summarily submitted after Appellant had discharged his attorneys and failed to file a brief. The Opinion of this Court affirming judgment and sentence was rendered on September 7, 1972; thereafter, a Petition for Rehearing was filed, with fifteen days given counsel for Appellant to brief; however, the Court did not request a Reply Brief from the Attorney General.

■ On Rehearing it is urged that the punishment imposed upon Appellant is excessive, cruel, and unusual punishment for the reason of special circumstances, and should be modified. We observe that the sentence of 15 years imprisonment for a felony, after former conviction, is not excessive, since the evidence was ample to support the verdict of the jury and the minimum punishment which Appellant could have received under said charge, is 10 years imprisonment. Based on the facts and circumstances of the instant case, this punishment is well within the range provided by law.

Appellant contends, however, that since he was an informer for the Oklahoma City Police Department, the Oklahoma Bureau of Investigation, and for certain Federal authorities, in the case of Rogers, Hightower and Willman v. State, Okl.Cr., 488 P.2d 366 (1971), he has requested, and been granted, Administrative Confinement amounting to virtual isolation because he is fearful for his life.

The Affidavit of Warden Park Anderson states, in substance:

"* * *

3. That Richard Lee Cothrum is kept in administrative security for protection of his life.

4. That administrative security prisoners and other prisoners are not kept together.

5. That Richard Lee Cothrum does not eat, work, exercise, or participate in recreation with other inmates.

6. That Richard Lee Cothrum is not eligible for Trustee duties. * * *"

Appellant has also attached, as an exhibit, a newspaper item which states as follows:

"ISOLATION OF FELON DISCLOSED

A 5-times convicted felon is being kept in isolation in the county jail because he was scalded by fellow prisoners last November, it was learned today.

The disclosure came in a district court hearing at which the burned man, Richard Lee Cothrum, 26, invoked the fifth amendment rather than testify for three Houston defendants who are charged with illegal possession of heroin.

TRIO ARRESTED

Cothrum appeared as a defense witness Wednesday and stated under oath that he was unable to obtain narcotics from the three suspects when he acted as an undercover agent for police last Oct. 13. The trio was arrested at the Airline Motel, and police confiscated narcotics and marijuana in their room, testimony showed. Cothrum's testimony Wednesday benefitted the defendants. But it was ordered purged from the record this morning, after Judge C. R. Board conducted a hearing away from the jury.

MAN WARNED

The judge ordered the unusual, evidentiary hearing because James R. McKinney, an assistant district attorney who is prosecuting the Houston suspects, warned Cothrum he could be charged with perjury. Board stopped the defense

proceedings for Robert Morgan Rogers, Frank Vernon Hightower and Lawrence Walter Willman, all of Houston, on the spot, and ordered that Cothrum's attorney be contacted and instructed to consult his client.

## INSTRUCTIONS GIVEN

Leon Tabor, Cothrum's lawyer, appeared in court with Cothrum this morning, and wrote down on paper the fifth amendment answer he instructed him to give to all questions asked by the three defendants' attorney, Raymond Burger. Cothrum gave the answer five times. Tabor said his client had been scalded after the three Houston men were arraigned and jailed, and after Cothrum also was jailed on two other pending felony charges.

## ACT CONFIRMED

He said Cothrum refused to tell him who did it.

Sheriff Bob Turner confirmed that Cothrum was scalded when some other prisoner, whose identity he said is unknown, poured boiling water from a coffee container on his abdomen and groin.

## TREATMENT GIVEN

Head Jailer Bill Lair said Cothrum was taken to Mercy Hospital for emergency treatment, and was returned to the hospital for daily treatment through Nov. 15, until his scald wound improved. Cothrum's testimony that Judge Board ordered stricken from the record, on grounds that Cothrum was not advised of his constitutional rights, was in direct conflict with the testimony given by a state crime bureau expert and three Oklahoma City police officers."

The record of the Pardon and Parole Board discloses that the five previous convictions referred to in the newspaper article, set forth above, are as follows:

Burglary, 2nd Degree

Burglary, 2nd Degree

Possession of Narcotics, AFCF

Robbery with Firearms

Uttering a Forged Prescription, AFCF.

The newspaper article, as well as the record before this Court, makes it abundantly clear that Appellant, at the trial of Rogers, Hightower and Willman, did not cooperate with the authorities, but instead, testified favorably toward the defendants; however, such testimony was stricken for the reason that he had not been advised by counsel and when advised by counsel, he refused to testify, claiming his privilege under the fifth amendment. It is interesting to note, and the records of the Pardon and Parole Board reflect, that all of the prisoners—Rogers, Hightower and Willman—have been discharged from the penitentiary. It is thus readily apparent that they cannot attack Richard Lee Cothrum while he is an inmate of the penitentiary. It might as easily be argued that the punishment be increased for the protection of Mr. Cothrum from the people he informed against in order to prevent them from harming him should he be placed on the streets to which they have been discharged.

In the light of the prior convictions and criminal record of the Appellant, it would appear that to modify this sentence on the grounds suggested, would be to trade a catfish for a minnow, for it appears that Mr. Cothrum is more of a habitual criminal than those against whom he informed.

For the above and foregoing reasons, I am of the opinion that the application to modify and the Petition for Rehearing should be denied, and the Clerk of this Court is directed to issue the Mandate forthwith.

BLISS, C. F., Jr., J., concurs.

BRETT, J., dissents.

BRETT, Judge (specially dissenting):

While I do not fault the majority decision in this matter, on petition for rehearing, I believe defendant should be allowed some consideration for his earlier police

activities as an informer. Notwithstanding that the only instance cited in defendant's brief, wherein he served as an informer, was in the case of *Rogers, Hightower* and Willman v. State, supra, I am convinced there were other cases also. Therefore, I believe this Court would be warranted in taking the same action it followed in earlier cases, and modify defendant's sentence to ten (10) years imprisonment.

In Cherry v. State, Okl.Cr., 276 P.2d 280 (1954), this Court stated:

"[T]his record discloses that this defendant had worked on two or three cases on previous occasions as an informer with Officer Stege of the Tulsa Police Department. . . . The record shows this defendant also worked with officers other than Officer Stege. . . . [W]e believe that this is a matter which the trial court should have given consideration in assessing punishment. . . . We therefore are of the opinion that the minimum punishment of 10 years under the provisions of Title 21, § 51, O.S.1951, subd. 1, is in keeping with justice under the circumstances and will be sufficient in this case; the judgment and sentence is accordingly so modified, Title 22, § 1066, O.S.1951, . . . ."

In Methvin v. State, 60 Okl.Cr. 1, 60 P. 2d 1062 (1936), this Court stated:

"[I]t appears that the defendant had agreed with the authorities in Louisiana to aid and assist federal and state officers to apprehend his codefendants, Clyde Barrow and Bonnie Parker, and in pursuance of said agreement did give to the authorities in Louisiana information that lead to their justifiable killing by officers of the law.

"For the reasons stated, we are of opinion that the punishment imposed is excessive, and that justice requires a modification of the judgment and sentence of death to that of imprisonment at hard labor in the penitentiary for life, and as thus modified the judgment is affirmed."