Murl Frederick WEBB, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–112.

Court of Criminal Appeals of Oklahoma.

July 8, 1975.

 

Don Anderson, Public Defender, Murl Frederick Webb, pro se, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Murl Frederick Webb, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–74–1727, for the offense of Oral Sodomy, in violation of 21 O.S.1971, § 886, and Case No. CRF–74–1728, for the offense of Taking Indecent Liberties with a Child Under the Age of Fourteen Years, in violation of 21 O.S.1971, § 1123. Both cases were consolidated for trial as a result of stipulation by the District Attorney and the defendant. His punishment was fixed by a jury at a term of ten (10) years' imprisonment for the offense of Oral Sodomy, and five (5) years' imprisonment for the offense of Taking Indecent Liberties with a Child Under the Age of Fourteen Years. From said judgments and sentences a timely appeal has been perfected to this Court.

The court conducted an *in camera* hearing to determine whether or not the prosecutrix, Alice Lynn Davenport, would be a competent witness and further to determine whether or not the conduct of the pre-indictment lineup met the minimum standards as set forth in *Thompson v. State,* Okl.Cr., 438 P.2d 287 (1968).

At the *in camera* hearing, the prosecutrix testified that she was seven years old and that she was in the second grade at Steed School. She further stated that she knew the difference between telling the truth and telling a lie, and that people "get spankings" when they don't tell the truth. She further testified that she went to Sunday School and knew who Jesus was and that He liked people to tell the truth, and that was what she wanted to do.

Also, at the *in camera* hearing, B. J. Schmidt testified that he was a Detective Captain for the Bethany Police Department and was so employed on the 7th day of February, 1974. He further testified that he had occasion, on February 12, 1974, to conduct a lineup containing the defend-

ant and four other men, whereupon he presented a picture of the lineup which he had taken and he stated it accurately portrayed the men and their attire. He further stated that prior to the lineup he advised the defendant of his rights and that the defendant at that time agreed to waive his rights and signed the appropriate form before being placed in the lineup. He lastly stated that the prosecutrix was present at the lineup.

During the *in camera* hearing the trial court ruled that the prosecutrix was a competent witness and further what had been marked as State's Exhibit No. 1, the photograph of the lineup, was admitted into evidence.

Following the *in camera* hearing, the State's first witness was the prosecutrix, Alice Lynn Davenport. She testified that she lived in Bethany, Oklahoma, and that on February 7, 1974, she was on her way to school when she saw a man, who she identified in court as the defendant. She further testified that at that time the defendant told her to take off her pants, whereupon the defendant put his finger in her rectum. She further stated that the defendant then pulled down his pants and "told me to suck his peter." She also stated that she did this and "then pus came out." She further testified the defendant then took her to school and thereafter she told her teacher, who took her to the restroom and called the principal. She testified that she then went home. She lastly testified that she attended a lineup in February at which time she pointed out the defendant as the man who had molested her on February 7, 1974.

Alvin Brown testified that he was the principal of Bethany Elementary School and was so employed on February 7, 1974, and that at such time Alice Lynn Davenport, the prosecutrix, was a pupil at said school. He further testified that on February 7, 1974, between 9:30 and 10:00 a. m., a teacher brought the prosecutrix to his office and the prosecutrix told him that a

man had picked her up in a car, had stuck his finger in her rectum, and then had made her "suck his wiener." He stated that after the prosecutrix related this story to him, he took her back to class and thereafter went to her home and related said story to the mother of the prosecutrix. He lastly testified that later the same morning the prosecutrix' father came to the school, at which time he related the story to her father, after which the father took the prosecutrix out of school for the rest of the day.

Joe Resneder testified that he was a police officer with the Bethany Police Department and was so employed on February 7, 1974. He related he had occasion to first meet the prosecutrix at the time the prosecutrix and her father came to the Bethany Police Department to report a crime. He, at that time, obtained a description of the car and a description of the man involved in the alleged crime. He stated that the vehicle was described to him as a greenish color, a sedan type, a medium to medium large type vehicle, with a dark brown or black interior. He further stated that the description of the man given to him was that of a white male, older than twenty years of age, with a slight growth of beard on his face, weighing at least 130 pounds, and approximately five feet, six inches tall, and wearing a black or dark brown cap. He further testified that subsequently a radiogram was issued for the automobile and the suspect.

F. D. Shoun testified that he was an officer with the Bethany Police Department and on the 7th day of February, 1974, he was working in that capacity as a patrolman. He arrested the defendant on February 7, 1974, at which time he gave the defendant Miranda warnings to which the defendant replied he did not want an attorney present at the lineup, and he agreed to participate in the lineup. He stated the prosecutrix was present at the lineup and she identified the defendant from the lineup as the man who had molested her. The witness was then shown State's Exhibit

No. 1, the photograph of the lineup in which the defendant participated, and the prosecutrix identified the defendant who was the center man in the photograph.

Alice Davenport testified that she was the mother of the prosecutrix and on February 7, 1974, the principal of her daughter's school came to her house on that morning and told her of the incident of which the prosecutrix had complained. She further testified that she called the prosecutrix' father and that he brought the prosecutrix home from school. She stated that she examined the prosecutrix and treated her for damage to the rectum.

B. J. Schmidt testified that he was the Captain of the Bethany Police Department and was so employed on February 7, 1974; that he had occasion to become active in the investigation of the case involving the defendant on the 12th day of February, 1974, at which time he conducted a lineup and interviewed the defendant in this case. He stated that the prosecutrix was present at said lineup and she positively identified the defendant as the man who had molested her.

The State then rested.

The defendant presented no evidence in his behalf and at that time the defense rested.

■ The defendant's first proposition of error asserts the evidence is insufficient to support the verdict. The record reveals unequivocally that the defendant molested the prosecutrix and that the defendant made the prosecutrix commit oral sodomy. This Court has repeatedly held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence

and determine the facts. See, *Jones v. State,* Okl.Cr., 468 P.2d 805 (1970). For this reason this Court has no authority to invade the province of the trier of facts and make a determination of the defendant's guilt or innocence. We, therefore, find this proposition to be without merit.

■ The defendant's next proposition asserts that the punishment is excessive. We need only observe the punishment was well within the range provided by law, and does not shock the conscience of this Court. See, *Turner v. State,* Okl.Cr., 479 P.2d 631 (1971). We accordingly, find this proposition to be without merit.

In addition to the above two assignments of error submitted on defendant's behalf by the Oklahoma County Public Defender, defendant has submitted a pro se brief containing five additional assignments of error. The remainder of this opinion will be devoted to a discussion of the points raised therein.

In his first pro se assignment of error, defendant claims that he was subjected to double jeopardy, first because he was tried after the charges against him had once been dismissed; second, because he was tried on both charges in one trial; and third, because he was charged with multiple charges arising from the same incident.

■ In dealing with the first point, our review of the District Court Docket does not indicate that either charge was ever dismissed; rather it reveals that defendant appeared at arraignment [1] on May 22, 1974, at which time hearing was set for June 25, 1974. On the latter date, defendant appeared in person and through counsel, and waived preliminary hearing. Trial was then set for September 11, 1974. On September 11th the trial was *continued,* not dismissed, until September 16, 1974, apparently because of the failure of the complaining witness to appear. The trial was held on September 16th. Thus, it appears that defendant has mistaken a continuance

1. The "arraignment" listed on the Docket Sheet apparently referred to defendant's initial appearance.

for a dismissal, rendering this portion of his first pro se assignment of error untenable. Since nothing in the record indicates that the granting of the continuance was an abuse of the trial court's discretion, or that defense counsel even objected to the continuance, we are unable to agree with defendant's allegation of double jeopardy premised thereon.

█ As to defendant's second basis for his double jeopardy argument, i. e., that he was improperly tried on both charges in one trial, we note that the docket sheet and remarks of the trial judge in the trial transcript (p. 45), clearly establish that the State and defense counsel stipulated to the trial of both charges simultaneously. Suffice it to say that defendant was bound by the stipulation of his counsel. See, *Montgomery v. State,* Okl.Cr., 474 P.2d 667 (1970).

█ As to the third basis of defendant's double jeopardy argument, we find that the fact that defendant was charged with two offenses, even though both arose from the same incident, did not constitute double jeopardy. A concise statement of the Oklahoma rule on double jeopardy was set forth in *Hill v. State,* Okl.Cr., 511 P.2d 604, 607 (1973), wherein we stated:

"As a general statement of the Oklahoma law regarding constitutional prohibition of twice placing the accused in jeopardy, we observe two fundamental elements. First, there must be successive subjection to jeopardy. Second, in each instance the offense must be one in the same. The second prosecution must be for the identical act and crime both in law and fact for which the first prosecution was instituted. In determining the identity of the offense, one act may constitute several offenses. Unless the offense, in its entirety, is a necessary element in and part of another, an acquittal or conviction of one is not a bar to prosecution for the other."

In applying the above test to the instant claim of double jeopardy, it is readily apparent that the factual and legal elements of the crime of Oral Sodomy, set forth in 21 O.S.1971, § 886,[2] differ from those constituting Taking Indecent Liberties with a Child Under the Age of Fourteen Years, 21 O.S.1971, § 1123,[3] so as to render prosecutions for both offenses proper even though they might arise from the same incident. The evidence adduced at trial was ample to support prosecution and conviction for both charges without running afoul of the double jeopardy prohibition. Accordingly, we find defendant's first pro se assignment of error to be without merit.

2. "Every person who is guilty of the detestable and abominable crime against nature, committed with mankind or with a beast is punishable by imprisonment in the penitentiary not exceeding ten years." In *Ex parte De Ford,* 14 Okl.Cr. 133, 168 P. 58 (1917), we included copulation between human beings through the mouth as being within the definition of this offense.

3. "Any adult person who shall knowingly and intentionally make any oral or written lewd or indecent proposal to any child under the age of fourteen (14) years for such child to have unlawful sexual relations, or sexual intercourse with him, or her, or any other person; or any such adult person who shall intentionally and designedly look upon, touch, maul or feel of the body or private parts of any child under the age of fourteen (14) years in any lewd or lascivious manner by any acts not amounting to the commission of any crime against public decency and morality, as may now be defined by the laws of Oklahoma; or any such adult person who shall designedly ask, invite, entice or persuade any child under the age of fourteen (14) years to go alone with him or her, or any other persons, to any secluded, remote or secret place, with the unlawful and wilful intent and purpose, then and there, to commit any crime against public decency and morality, as may now be defined by the laws of Oklahoma, with such child or to in any manner lewdly or lasciviously look upon, touch, maul or feel the private person or the private parts of such child in any indecent manner, or in any manner relating to sex matters or sex interest, shall be deemed guilty of a felony and upon conviction thereof, he shall be punished by imprisonment in the Oklahoma State Penitentiary for a term of not less than one (1) year nor more than twenty (20) years."

■ In his second pro se assignment of error, defendant claims that the lineup held in his case was unconstitutionally defective due to absence of counsel, citing *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). However, the uncontroverted evidence of Officer Schmidt at trial and in the *in camera* hearing established that defendant was advised of his rights prior to the lineup, and then waived the same.

In *Chandler v. State,* Okl.Cr., 461 P.2d 983 (1969), we stated in paragraph two of the Syllabus:

"A pre-trial in-custody exhibition of an accused to an identifying witness is a critical stage of the criminal proceeding entitling accused to presence of counsel, and such an exhibition by police without notice to and in absence of counsel calls in question the admissibility at trial of the in-court identification of the accused by such an identifying witness."

However, we have also held, as in *Cothrum v. State,* Okl.Cr., 503 P.2d 1298, 1301 (1972), as follows:

" . . . Defendant may waive any constitutional right which is largely for the benefit of accused or in the nature of a personal privilege, including his right to counsel, so long as he does so knowingly and intelligently. . . ."

The transcript of Officer Schmidt's testimony during the *in camera* hearing reveals the following:

"[PROSECUTING ATTORNEY] Q. I would like to ask you: Did you talk to the defendant about appearing in the line-up?

A. Yes, I did.

Q. Did you advise him of his rights?

A. He was informed of his rights before being placed in the line-up. He agreed to waive his rights and he signed the form." [Tr. 10]

\* \* \* \* \* \*

"(By the Court) Q.: Captain Schmidt, did you tell the defendant the purpose of the line-up?

A. Yes, sir, he was informed of the investigation that was being conducted because I had interviewed him prior to this and after advising him of his rights and questioning him as to his activities with regard to this case prior to this." [Tr. 12]

As the foregoing uncontroverted evidence clearly established that defendant knowingly and intelligently waived his right to counsel at the lineup, we find this assignment of error to be without merit.

■ In his third pro se assignment of error, defendant alleges incompetent counsel at trial and insufficient time after appointment of counsel before trial to properly prepare a defense. As to the first allegation, we note from a review of the transcript that there is nothing in the record to indicate that the Public Defender who represented defendant at trial was incompetent, or acted in any manner other than that of an effective advocate on behalf of his client. As stated in *Jones v. State,* Okl.Cr., 513 P.2d 1402 (1973):

"As a general rule, relief upon a final conviction on the ground of ineffective counsel will be granted only when the trial is a farce or mockery of justice, or is shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation. *Ellis v. State of Oklahoma,* 430 F. 2d 1352 (10th Cir. 1970), *cert. denied* 401 U.S. 1010, 91 S.Ct. 1260, 28 L.Ed.2d 546. . . . "

. . . The burden is clearly upon defendant to show inadequacy. *Parks v. State,* Okl.Cr., 457 P.2d 818 (1969), a burden which cannot be met by defendant pointing out only possible errors in counsel's judgment or lack of success in the defense. *Mitchell v. United States,* 104 U.S.App.D.C. 57, 259 F.2d 787 (1958)."

Defendant's claim of incompetent counsel falls well within the above rule, and is

completely without merit. As to defendant's claim that he had insufficient time and opportunity to consult with his appointed counsel before trial, we note from our review of the docket sheet compiled in the District Court that as early as May 22, 1974, defendant was represented by the Oklahoma County Public Defender's Office, at the arrangement. As early as June 25, 1974, defendant was represented by Assistant Public Defender Ed Oliver (who represented defendant at trial), at the time defendant waived preliminary hearing. As defendant's trial was not held until September 16, 1974, it clearly appears that defendant had several months in which to consult with counsel prior to trial. Moreover, defendant's allegation that he consulted with the Public Defender only once before trial and that the Public Defender ignored defendant's suggestions in preparing his defense, are nothing more than bare allegations unsubstantiated by the record. As such, defendant has failed to meet the burden placed upon him by the rule enunciated in *Jones v. State, supra*. Accordingly, we find this assignment of error to be without merit.

▮▮▮ In his fourth pro se assignment of error, defendant claims that the trial court erred in allowing hearsay evidence into the record, specifically the testimony of Mr. Alvin Brown in which he related the victim's statements to him shortly after the incident. While we agree with defendant that the statements were hearsay, we also agree with the trial court that they were admissible as part of the res gestae. A case in point is *Munn v. State,* Okl.Cr., 459 P.2d 628 (1969), a prosecution for Lewd Molestation wherein we upheld the admissions of the victim's statements made to a witness shortly after the alleged molestation. In dealing with the question, we described the res gestae rule as follows:

"This Court has stated repeatedly, as in the very early case of *Chastain v. State,* Okl.Cr.App., 287 P. 826:

'It is not possible to define the term *"res gestae"* by any exact definition which will fit all cases; the term, in a general way, may be defined as the circumstances, facts, and declarations that grow out of the main fact, and shed light upon it, and tend to explain it, and made at a time so near, either prior or subsequent to the main act, as to exclude the idea of deliberation or fabrication.'

"And, further:

'No fixed measure of time or distance from the main occurrence can be established as a rule to determine what should be a part of the res gestae. Each case must necessarily depend upon its own circumstances to establish whether the facts offered were a part of the same continuing transaction.' "

From a review of Mr. Brown's testimony, we note that he first stated that the girl was brought to his office between 9:30 and 10:00 a. m. by a teacher, whereupon defense counsel objected on the ground of hearsay to admission of anything told to the principal by either the teacher or the girl. The prosecutor then deleted any question as to the teacher's statements to the witness, restricting his questions to the girl's statements.

We find that the admission of her statements falls well within the *res gestae* rule enunciated in *Munn v. State, supra,* in that they were made so soon after the alleged incident as to negate any implication that they were contrived, deliberated upon, or fabricated by the girl. We, therefore, find that this assignment of error is without merit.

In his fifth and final pro se assignment of error, defendant alleges that an accumulation of errors and irregularities in the trial occurred which, considering the record as a whole, deprived him of a fair and impartial trial. Having disposed of defendant's specific assignments of error, and having reviewed the transcript for any other errors which could lend support to the instant proposition, we are unable to

agree that defendant received anything but a fair and impartial trial.

For all of the above and foregoing reasons, the judgment and sentence appealed from is accordingly affirmed.

BLISS, J., concurs.

BRETT, P. J., concurs in results.